In the Matter of JOSEPH P. MORAN, Appellant, against
FIORELLO H. LA GUARDIA, as Mayor of the City of
New York, et al., Respondents.

(Argued March 2, 1936; decided April 14, 1936.)

*A. Spencer Feld* for appellant. The power to declare the temporary emergency ended did not require a legislative enactment but a mere joint resolution. (*Koenig v. Flynn*, 258 N. Y. 292; 285 U. S. 375; *Smiley v. Holm*, 285 U. S. 355; *Hutchins v. Jackson*, 23 Pac. Rep. [2d] 355.) The delegation in the emergency legislation of chapter 637 of the Laws of 1932, by the lawmaking body to the legislative chambers to determine the end of the emergency was a valid delegation of power. (*Barto v. Himrod*, 8 N. Y. 483; *Dowling v. Lancashire Ins. Co.*, 92 Wis. 63: *Winslow v. Fleishman*, 112 Ore. 23; *Lathrop v. Stedman*, 42 Conn. 583.)

*Paul Windels, Corporation Counsel* (*Edmund L. Palmieri* and *Paxton Blair* of counsel) for respondents. A concurrent resolution of the Legislature is not effective to repeal or modify a previous statutory enactment. (*People ex rel. Argus v. Palmer*, 12 Misc. Rep. 392; 146 N. Y. 406; *Matter of Leach*, 115 Misc. Rep. 660; 197 App. Div. 702; 232 N. Y. 600; *People v. Bowen*, 21 N. Y. 517; *Matter of Doyle*, 257 N. Y. 244; *Matter of Koenig v. Flynn*, 258 N. Y. 292; 285 U. S. 375.)

FINCH, J. This is an appeal from an order denying a peremptory mandamus order directed to the authorities of the city of New York commanding them in effect to restore salaries to the pre-emergency level.

The Appellate Division affirmed the denial and gave leave to appeal to this court.

The question arises through the application of a patrolman to compel restoration of his salary to $3,000 per annum, less his pension deductions, whereas at the present time he is receiving $2,810, less the pension deductions.

The patrolman contends that the salary paid him should be the mandatory amount imposed upon the city in accordance with an act of the Legislature (Laws of 1929, ch. 202) following a referendum. The city contends, on

the other hand, that the Legislature, by law duly enacted (Laws of 1932, ch. 637) permitted the city to reduce these salaries and that this later law is still in force. Section 1 of this so-called economy act declared that a temporary emergency existed requiring its enactment and that its provisions are to apply " until the legislature shall find their further operation unnecessary."

At first the Legislature passed a bill to repeal this law which was vetoed by the Governor. Next the Legislature sought to accomplish the same result by means of a joint resolution.

The sole question thus presented by this proceeding is whether the Legislature can terminate this economy legislation by concurrent resolution or whether for such termination there is required a legislative enactment. The answer to that question depends upon the construction to be given to the words " until the legislature shall find their further operation unnecessary."

A concurrent resolution of the Legislature is not effective to modify or repeal a statutory enactment. (*Matter of Leach*, 115 Misc. Rep. 660; affd., 197 App. Div. 702; affd., 232 N. Y. 600.) To repeal or modify a statute requires a legislative act of equal dignity and import. Nothing less than another statute will suffice. A concurrent resolution of the two houses is not a statute. (*People ex rel. Argus Co.* v. *Palmer*, 12 Misc. Rep. 392; affd., 146 N. Y. 406.) A concurrent resolution, unlike a statute, is binding only on the members and officers of the legislative body. It resembles a statute neither in its mode of passage nor in its consequences. The form of a bill is lacking and readings are not required. It does not have to lie on the desks of members of the Legislature for three legislative days. (N. Y. Const., art. III, § 15.) But more important, its adoption is complete without the concurrent action of the Governor, or lacking this, passage by a two-thirds vote of each house of the Legislature over his veto. Thus a joint resolution may be adopted by a mere

majority of the Legislature without action by the Governor or notice to the public, whereas the enactment of a statute requires action by three distinct bodies and at least three days' notice to the public. As has been well said: " In the exercise of this vast power, [of the Legislature] according to the fundamental idea and constitution of parliament, the concurrence of the three distinct bodies of which it is composed, each acting by itself, and independent of the others, is necessary. No two of them acting together, much less one alone, can make a law." (Cushing on Elements of the Law and Practice of Legislative Assemblies in the United States, § 707; *People* v. *Bowen*, 21 N. Y. 517.)

In addition to the objection that in general a concurrent resolution may not repeal a statute duly enacted we have here also as a part of this economy law precise language which negatives the contention of petitioner. As noted, the economy bill itself provided for its continued operation until the Legislature should find it unnecessary. Ordinarily when we contemplate action by the Legislature we have in mind a statutory enactment. Before we hold that a statute may be terminated or repealed by some act other than a repealing statute we must at least find a clearly expressed provision to that effect embodied in the law thus to be terminated.

In *Matter of Koenig* v. *Flynn* (258 N. Y. 292; affd., 285 U. S. 375) it was held that action by the Legislature meant action by both houses and the Governor. The language involved was " shall be prescribed in each State by the Legislature thereof." (U. S. Const. art. 1, § 4.) There is striking similarity between the terms " prescribed  *  *  *  by the Legislature " and the terms of the statute in the case at bar " *  *  *  until the legislature shall find  *  *  *."

The conclusion at which we have arrived is strengthened also by noting that when the Legislature wished to provide for the termination of an emergency by joint

resolution it has so expressly stated. In the legislation concerning the Insurance and Banking Laws of 1933 the provisions were as follows: " The period of the emergency herein provided for shall be from the date of the taking effect of this act until such date as the legislature may, by joint resolution, designate to be the termination thereof, or, if the legislature be not in session, the date so designated by a proclamation of the governor." (Chs. 40, 41.)

The divergence in the language used in the above statute as compared with the language used in the statute in the case at bar refutes the contention of the petitioner. The express language providing for the termination of that statute by joint resolution negatives a finding that the same result should be reached in the case at bar by implication after disregarding the ordinary meaning of the language used.

Not only reason but authority demonstrate that the joint resolution upon which is based the application of petitioner does not constitute action by the Legislature and cannot result in the repeal of the so-called economy bill.

It follows that the order appealed from should be affirmed, with costs.

CROUCH, J. (dissenting). Gathering wisdom or at least technique from an abundance of experience in emergency legislation, the Legislature in enacting chapters 40 and 41 of the Laws of 1933, relating to the powers of the Superintendent of Insurance and of the Banking Board, provided that the period of emergency with which it was then concerned should continue " until such date as the legislature may, by joint resolution, designate to be the termination thereof." There can be no question that those statutes would be put an end to by the passage of a joint or concurrent resolution.

When the economy act was passed in 1932 (Laws of 1932, ch. 637), the Legislature realized that it was making a law which could be constitutionally justified only by

the continued existence of a certain state of facts. (Cf. N. Y. Const., art. XII, § 2; *Chastleton Corp.* v. *Sinclair*, 264 U. S. 543; *Home Building & Loan Assn.* v. *Blaisdell*, 290 U. S. 398, 442.) It deemed that such a state of facts then existed. It could not foresee how long it would continue to exist. It, therefore, provided at the very outset of the statute as follows:

" Section 1. It is hereby declared that a temporary emergency exists requiring the enactment of the following provisions, and their application *until the legislature shall find their further operation unnecessary.*"

The question here is a very simple one. Read in the light of the circumstances under which the statute was enacted, did the language used disclose a legislative intent that its provisions should continue to apply until the law was repealed by another law, or until the Legislature, in its fact-finding capacity, should " find " that they were no longer necessary? If termination by a repealing law was intended, the words used are singularly inappropriate and the provision itself is superfluous. The Legislature in its law-making capacity had the power, without any reservation, to pass a repealing statute at any time. The only possible purpose of the provision was to enable the Legislature, by a fact-finding embodied in a joint resolution, to put an end to the act when, in its judgment, the justifying emergency had passed. If the language used here is less sophisticated, it is no less clear in meaning than the language used to the same end in later statutes.

The order appealed from should be reversed.

CRANE, Ch. J., LEHMAN and HUBBS, JJ., concur with FINCH, J.; CROUCH, J., dissents in opinion in which O'BRIEN and LOUGHRAN, JJ., concur.

Order affirmed.