SCHOOLS AUTHORIZED TO SHARE IN FUNDING TO "NORMAL SCHOOLS" The passage of House Concurrent Resolutions 1053 and 1056 of the 33rd Legislature, First Session, have the effect of expressing the current intent of the Legislature to have certain institutions qualify for Section 13 funding, but did not amend 70 O.S. 3904 [70-3904] (1970). Further, "similar State Colleges" may become recipients of Section 13 funding when such institutions are either created as a new institution or are functionally changed, it being the authority of the State Regents for Higher Education to determine such functional change; and when any such institution becomes a "similar State College" by either method, the provisions of 70 O.S. 3904 [70-3904] (1970) authorize a sharing in the one-third allocations to "normal schools". The Attorney General has considered your request for an opinion, wherein you set out the following: "The last session of the Legislature passed a concurrent resolution which added three additional institutions that would share in the Section 13 money as provided for in Article XI, Section 5 of the Constitution. It is my understanding that an allocation has already been made. I had requested your opinion as to the constitutionality of the addition of new recipients and also an opinion as to the lawfulness of the additions being made by Simple Concurrent Resolution." H.C.R. 1053, 33rd Legislature, First Session, indicated that it was the intent of the Legislature that Cameron College be included within the State colleges entitled to share in one-third of certain school land funds set aside for normal schools under Article XI, Section 5 of the Oklahoma Constitution. H.C.R. 1056, 33rd Legislature, First Session, indicated that it was the intent of the Legislature that Oklahoma College of Liberal Arts and Oklahoma Panhandle State College of Agriculture and Applied Science, respectively, be included within the state colleges entitled to share in the one-third of certain school land funds set aside for normal schools under Section Five of Article XI of the Oklahoma Constitution. That pertinent provision of Section Five of Article XI of the Oklahoma Constitution provides in part as follows: "Section Thirteen in every portion of the State which has been granted to the State, shall be preserved for the use and benefit of the University of Oklahoma and the University Preparatory School, one-third; of the Normal Schools now established, or hereafter to be established, one-third; and of the Agricultural and Mechanical College and Colored Agricultural and Normal University, one-third. The said lands or the proceeds thereof as above apportioned to be divided between the institutions as the Legislature may prescribe: . . ." In amplification and vitalization of Section Five, supra, the Legislature so prescribed by the enactment of 70 O.S. 3904 [70-3904] (1970) which provides in part as follows: "The income, interest, rentals and proceeds of the sale of Section Thirteen in this State, and any indemnity lands in lieu of Section Thirteen which were granted to the State for the use and benefit of the University of Oklahoma, Agricultural and Mechanical College, the Normal Schools, the University Preparatory School, and the Colored Agricultural and Normal University, shall be divided and distributed as follows: "To the University of Oklahoma and the Northern Oklahoma College, one-third; the University of Oklahoma to receive nine-tenths of said one-third; and the Northern Oklahoma College to receive one-tenth of said one-third; to the Oklahoma State University of Agricultural and Applied Science and Langston University, one-third; the Oklahoma State University of Agricultural and Applied Science to receive nine-tenths of said one-third, and Langston University to receive one-tenth of said one-third; to Central State College, East Central State College, Northeastern State College, Northwestern State College, Southeastern State College, and Southwestern State College, the Normal Schools, one third, the same to be equally divided among said State Colleges, provided, that in the event of the establishment of similar State Colleges, such additional State Colleges shall share equally with the other State Colleges in the division and distribution of the one-third last above mentioned . . ." (Emphasis added) Hence, the Legislature has purported to add or express their intention of including to the statutorily named institutions, three (3) additional institutions by way of House Concurrent Resolution. The overriding question to be considered is: "How may `additional institutions' be added to the statutory list of state colleges to be qualified for the allocation of Section 13 funds?" Your next question asks, does a Concurrent Resolution have the force and effect of law to, in effect amend a prior enactment by the Legislature? House Concurrent Resolutions 1053 and 1056 apply to 70 O.S. 3904 [70-3904] (1970) as cited herein, which vitalized the constitutional provision relating to the disbursement of Section Thirteen School land funds. In Oklahoma, a joint resolution, one which is passed in both Houses and signed by the Governor, and passed in conformity with the Constitution, has the same effect as a statute, Board of Commissioners v. Shaw, 199 Okl. 66,182 P.2d 507 (1947), and thereby may operate to alter or modify an existing law, where such alteration or modification is of a temporary character, Oklahoma News Co. v. Ryan, 101 Okl. 151 (1924). A joint resolution will be considered by the court as an aid in construing the original Act, Board of Commissioners v. Alexander,58 Okl. 128, 159 P. 311 (1916); but, the pertinent intent is the intent of the Legislature which passed the Act, and not that of a later Legislature, Stephens Produce Co. v. Stephens, 332 P.2d 674 (Okla. 1958). A concurrent resolution deals with matters peculiarly within the province of the Legislature alone. They have never embraced legislative provisions proper, and hence, have never been deemed to require executive approval, Fifty-fourth Congress, 2nd Sess., Senate Report No. 13335. In general, it may be said that concurrent resolutions are not law because they are not legislative in character, F.H.E. Oil Co. v. Comm. of Int. Rev., 150 F.2d 857 (C.C.A. 5th, 1945). The Courts have rejected concurrent, resolutions where they attempt to repeal a law, Moran v. LaGuardia, 270 N.Y. 450, 1 N.E.2d 961 (1936) and equally, an attempt to amend by concurrent resolution would also fail as would any attempt of a Legislature to express the opinion of a prior Legislature. Therefore, H.C.R. 1053 and H.C.R. 1056 are not amendatory in nature, but rather express the Legislature's intention of having the three institutions named therein as recipients of the Section 13 funds. The question as to the constitutionality of the addition of new recipients of Section Thirteen Funds remains to be answered. The Legislature is specifically authorized by Section Five of Article XI to prescribe the division of funds within the "one-third" credited to the "normal" schools. The Legislature so complied by the enactment of Section 3904. An "open-end" provision is thereby contained in the Constitution relating to the subsequent addition of "normal" schools. The pertinent provision of Section 3904 is as follows: ". . .provided; that in the event of the establishment of similar State Colleges, such additional State Colleges shall share equally . . ." (Emphasis added) The language of the above provision indicates an "automatic effect" whereby once a "similar State College" is "established", it would automatically be included, effective from such establishment, without the further action of the Legislature. Both the Constitution and Statute contemplates future additions of "Normal schools" or "similar State Colleges". The only question is how such additional institutions are to become recipients. While the Constitution referred to the "normal schools" that existed in 1907, the Legislature further classified them as "State Colleges". A "Normal School" is defined as a training school for teachers; one in which instruction is given in the theory and practice of teaching, Board of Regents v. Painter, 102 Mo. 464, 14 S.W. 938. A "College" is an organized assembly, a collection of persons, established by law, and empowered to cooperate for the performance of some special function, Black's Law Dict., 329 (4th Ed. 1961). The function of a normal school obviously is that of training for the teaching profession. Article XIIIA, Section 2 of the Oklahoma Constitution provides that the Oklahoma State Regents for Higher Education shall determine the functions and course of study in each of the institutions to conform to the standards so prescribed by said Regents. Whether an institution is classified as normal, liberal arts, or agricultural would be determined by its particular functions. Accordingly, the Oklahoma State Regents for Higher Education, pursuant to their constitutional responsibility, can so designate an institution which would by authority of Section 3904 become an "additional similar state college" or a "Normal School" pursuant to Article XI, Section 5 and accordingly, establish qualification for Section Thirteen funding. A question we have considered concerns how similar state colleges can be established. Certainly included are new institutions, created since the enactment of Section 3904, but it is our opinion that also included would be existing institutions whose function changes or development make them similar to the participating state colleges. Therefore, it is the opinion of the Attorney General that your questions be answered as follows: The passage of House Concurrent Resolutions 1053 and 1056 has the effect of expressing the current intent of the Legislature to have certain institutions qualify for Section 13 funding but did not amend 70 O.S. 3904 [70-3904] (1970). It is further the opinion of the Attorney General that "similar State Colleges" may become recipients when such institutions are either created as a new institution or is functionally changed. It is the authority of the State Regents for Higher Education to determine such functional change. It is the opinion of the Attorney General that when such institution becomes a "similar State College" by either method, the provisions of 70 O.S. 3904 [70-3904] (1970) authorize a sharing in the one third allocations to "normal schools". (Larry L. French)