QUESTIONS:
1. Is the Lee County Housing Authority a valid public corporation even though it has been inactive for a period of approximately 10 years?
2. Is the Lee County Board of County Commissioners authorized to rescind its resolution of February 23, 1966, adopted pursuant to s. 427.27, F. S., which declared a need for the housing authority to function in Lee County and thereby declare the housing authority to be nonexistent?
SUMMARY:
The Lee County Housing Authority created under Ch. 421, F. S., remains a valid public corporation or public quasi corporation even though it has been inactive for a period of approximately 10 years. A county housing authority is a distinct and independent entity created by the Legislature; therefore, only the Legislature may dissolve or terminate the existence of a county housing authority. Once the board of county commissioners has adopted a resolution declaring the need for a housing authority to function in the county, the repeal of such resolution or the adoption of a new resolution by the board declaring that there is no longer a need for the housing authority to function in the county will not operate to dissolve or terminate of suspend the functioning of the county housing authority.
Section 421.27(1), F. S., in pertinent part, reads:
 In each county of the state there is hereby created a public body corporate and politic to be known as the `housing authority' of the county; provided, however, that such housing authority shall not transact any business or exercise its powers hereunder until or unless the government body, or proper resolution shall declare at any time hereafter that there is a need for a housing authority to function in and for said county . . . .
Section 421.27(2), F. S., provides that, upon notification of the adoption of such resolution, the commissioners of a housing authority created for a county shall be appointed by the Governor. This section further states that `each housing authority created for a county and the commissioners thereof . . . shall have the same functions, rights, powers, duties, immunities and privileges provided for housing authorities created for cities and the commissioners of such housing authorities, in the same manner as though all the provisions of law applicable to housing authorities created for cities were applicable to housing authorities created for counties . . . .' In this regard, s. 421.04(3), F. S., provides:
 In any suit, action or proceeding involving the validity or enforcement of or relating to any contract of the authority, the authority shall be conclusively deemed to have become established and authorized to transact business and exercise its powers hereunder upon proof of the adoption of a resolution by the governing body declaring the need for the authority. Such resolution or resolutions shall be sufficient if it declares that there is such need for an authority and finds in substantially the foregoing terms, no further detail being necessary, that either or both of the above enumerated conditions exist in the city. . . .
Your letter advises that pursuant to s. 421.27(1), F. S., the Board of County Commissioners of Lee County on February 23, 1966, adopted a resolution declaring that there was a need for a housing authority to function in the county, and the Governor appointed the commissioners of the housing authority, which appointments were confirmed by the board of county commissioners on July 6, 1966. (It should be noted that s. 421.27 does not in express terms qualify or limit the Governor's appointive powers, other than requiring his appointees to be qualified electors of the county, or his suspension power and does not require the approval or the concurrence of the county commission for the appointment or removal or suspension of the commissioners of an county housing authority.) You state that `there is no evidence of any work being accomplished by the commission[ers] and, upon expiration of their terms, no new appointments were made to the authority.'
You also advise that the housing authority remained dormant and inactive until March 1977, when a group of citizens requested that new members be appointed to the housing authority. However, the Lee County Board of County Commissioners adopted a resolution stating that there was no need to `reactivate' the authority or to appoint new members to said body. Nevertheless, on June 20, 1977, the Governor appointed five members to the housing authority, which members are `prepared to conduct the activities of the authority pursuant to Florida law.' Your question must be considered, therefore, in light of these circumstances.
AS TO QUESTION 1:
Section 421.27(1), F. S., states that `[in] each county of the state there is hereby created a public body corporate and politic to be known as the `housing authority' of the county . . . .' (Emphasis supplied.) Pursuant to s. 421.08(1), F. S., a housing authority shall have perpetual succession. Thus, it is clear that it is the Legislature which has created the housing authority as a public or public quasi corporation. See O'Malley v. Florida Insurance Guaranty Association, 257 So.2d 9, 11 (Fla. 1971), wherein the court listed housing authorities as examples of public corporations in Florida since `they are organized for the benefit of the public.'
In the absence of constitutional restriction, the Legislature is empowered to create a public corporation for the purpose of carrying out a state function. 81A C.J.S. States s. 141, p. 583. The Legislature defines the powers of such corporations, and they have only such authority as has been delegated to them by law. Forbes Pioneer Boat Line v. Board of Commissioners, 82 So. 346
(Fla. 1919). As they are creatures of the Legislature, public corporations or public quasi corporations may be abolished or eliminated by that body. 81A C.J.S. States s. 141.
The Legislature, however, has permitted the counties through their boards of county commissioners to decide whether or not they wish to activate the functioning of a housing authority within the confines of the county. It is well established that statutes may become effective on the happening of certain conditions or contingencies specified in the act or implied therefrom. Town of San Mateo v. State ex rel. Landis, 158 So. 112 (Fla. 1934); Gaulden v. Kirk, 47 So.2d 565 (Fla. 1950); Stewart v. Stone,130 So.2d 577 (Fla. 1961). Such is the case with housing authorities, since s. 427.27(2), F. S., provides that a county housing authority may not transact any business or exercise its powers under Ch. 421, F. S., until or unless the board of county commissioners by proper resolution declares a need for such authority to function in the county. However, the language of s.421.27(1) makes clear that it is the Legislature which has created and established the housing authority as a public body corporate and politic; the role of the county is to activate or initiate thefunctioning of the authority in the county. Under such circumstances, it is evident that the continued existence of the Lee County Housing Authority as a distinct and independent entity must be examined with reference to general principles relating to the status of public bodies created by the Legislature.
As county housing authorities are created by legislative act, the sole method of termination of their legal status is by legislative act. See AGO 076-236 wherein it was held that legislative failure to provide funds for travel expenses and staff of the State Board of Building Codes and Standards did not operate to abolish said board, and that the board continued in existence until statutory authority for its existence was either expressly or impliedly repealed by the Legislature.
The courts have often applied this rule when considering the status of municipal corporations which have remained dormant for long periods of time. Thus, in Treadwell v. Town of Oakhill,175 So.2d 777 (Fla. 1965), the court held that the town of Oakhill was a `valid, subsisting municipality' notwithstanding the fact that the last meeting of the town commissioners was held on July 2, 1930. The court ruled that only the Legislature had the authority to abolish municipalities and that `[a] non-user of municipalpowers does not result in dissolution.' (Emphasis supplied.)Accord: Brown v. City of Marietta, 142 S.E.2d 235 (Ga. 1965), holding that a municipal charter had not expired or been forfeited although it had not been activated for 79 years and no city officials had even been elected or appointed; 62 C.J.S. MunicipalCorporations s. 103, p. 230, stating that a municipal corporation may not surrender the municipal charter unless authority to do so has been conferred by law; AGO 076-96.
Applying these principles to the analogous situation presented by your inquiry, I find no provision in either Ch. 421, F. S., or elsewhere in the statutes providing for the dissolution of a housing authority following the adoption of a resolution of need by the board of county commissioners as prescribed in s. 421.27(1) under circumstances where such housing authority has ceased to function or exercise its statutory powers. Compare s. 421.261, providing that within certain counties a municipal housing authority shall continue to function in all respects should the municipality be abolished; s. 421.28, providing that if the governing bodies of two or more contiguous counties declare by resolution that there is a need for a regional housiong authority, each county housing authority created by s. 421.27 shall immediately cease to exist except for the purpose of winding up its affairs; and s. 421.50, providing for the exclusion of a county from the area of operation of a regional housing authority. In this regard, it should be noted that legislation in other states provides for the dissolution of a housing authority if such authority has been inactive for a specified period of time. See,e.g., Mont. Rev. Code s. 35-146, providing that if, after a lapse of 2 years from the date of the creation of the housing authority, no housing project has been commenced or contract entered into for such purposes, then the governing body may adopt a resolution stating that there is no need for the housing authority to exist and that it should be dissolved. Upon serving a copy of such resolution upon the Secretary of State, the housing authority is dissolved, all its functions cease, and the commissioners are discharged. Thus, if the Legislature had intended to establish a procedure whereby the existence of an inactive housing authority could be terminated, it could have easily done so. Cf. s. 165.051, F. S., providing for the dissolution of the charter of any existing municipality or special district. In the absence of such legislation, I can only conclude that the Lee County Housing Authority remains and is a valid public corporation or public quasi corporation even though it has been inactive for approximately 10 years.
Your first question is answered in the affirmative.
AS TO QUESTION 2:
At the outset, it should be noted that, as discussed in question 1, the Legislature has created and established a housing authority as a public body corporate and politic in each county of the state, and it alone possesses the power to abolish, dissolve, or terminate such authorities. Moreover, the commissioners of said housing authority are appointed by the Governor, he alone may fill vacancies in office of the commissioners of the authority, and they may be removed or suspended only by him `in the same manner and for the same reasons as other officers appointed by the Governor.' Section 421.27(2), F. S. And, pursuant to s. 7(a), Art. 4, State Const., only the Governor may suspend such public officers for the reasons enumerated therein, and, upon the suspension, such officials may be removed only by the Senate. Accordingly, the board of county commissioners may neither `deactivate' the housing authority nor remove the duly appointed commissioners of said body. See State ex rel. Kelly v. Sullivan,52 So.2d 422 (Fla. 1951).
The remaining consideration is whether or not the board of county commissioners may suspend or terminate the operation and functioning of the county housing authority by rescinding its resolution of February 23, 1966, declaring the need for the authority to function in the county. In other words, since the board of county commissioners is not authorized to abolish or dissolve the authority or to remove its commissioners from office, may the board by rescinding its earlier resolution effectively prohibit the authority from transacting any business or exercising its powers under Ch. 421, F. S.?
As noted in question 1, county housing authorities are public corporations or public quasi corporations. They are independent of, and with an identity separate from that of, the county or its governing body. Attorney General Opinion 064-117. In State ex rel. Burbridge v. St. John, 197 So. 131, 134 (Fla. 1940), the Supreme Court discussed the nature of a municipal housing authority created pursuant to Ch. 421, F. S.:
 Thus there is created in substance and effect a real
corporation, a separate and distinct corporate entity from that of the municipality, having power to contract with the municipality, and furthermore, a corporation which is not a municipality, its prime purposes being the construction and renting of dwellings or housing accommodations to tenants of a low income group for a reasonable rental price, in competition with private citizens.
 Nor is the Housing Authority of Jacksonville a mere agency of the City of Jacksonville. If such were the case, then the City of Jacksonville might be liable for the large indebtedness created or to be created by the Housing Authority. But the Act under which it was created did not intend that the Housing Authority should be a mere agency of the City Government.
A county housing authority possesses the same powers and functions as a municipal housing authority; thus, the principles expressed in State ex rel. Burbridge v. St. John apply with equal force to a county housing authority. Although a county housing authority may be considered to be an agency of the county under certain statutes for certain purposes (see AGO 055-245), it retains an independent and separate corporate existence and is not a subordinate body of the county.
Moreover, I find no provision in Ch. 421, F. S., which authorizes the board of county commissioners to divest the county housing authority of any of its powers under Ch. 421, should the board determine that there is no longer any need for the housing authority to function in the county. Cf. Moran v. La Guardia,1 N.E.2d 961 (N.Y. 1936), indicating that the legislature could provide in the original law that the act shall cease to operate upon the adoption of a joint resolution determining that the emergency was at an end. Upon the adoption of a resolution declaring a need for a housing authority to function in the county, the discretion of the board with respect to the operation of a housing authority is at an end.
In Orange City Water Company v. Town of Orange City,188 So.2d 306, 309 (Fla. 1966), the Florida Supreme Court held that, once a board of county commissioners had by resolution invoked the provisions of Ch. 367, F. S., by bringing the water systems of the county under the jurisdiction of the Public Utilities Commission [now Public Service Commission], the board's repeal of said resolution `was of no legal effect' and did not oust the jurisdiction of the commission to regulate the water systems in the county. The court relied upon a Wisconsin case — Northern Trust Co. v. Snyder, 89 N.W. 460 (Wis. 1902) — in holding that a special limited power, once executed, is exhausted and that, in the absence of legislative authority, the adoption of an option law is final, and cannot be undone. Accord: Attorney General Opinion 071-372.
Similarly, with respect to county housing authorities, the act of the board of county commissioners in adopting a resolution declaring the need for a housing authority to function exhausts the role of the board of county commissioners. The Legislature has not empowered the board to supervise or otherwise control the housing authority in any manner following the adoption of the resolution. In the absence of such legislative authorization, the board may not exercise any further control over the functioning of the authority. Ideal Farms Drainage Dist. v. Certain Lands,19 So.2d 234 (Fla. 1944); Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952); State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628, 636 (1 D.C.A. Fla., 1974); cert.dismissed, 300 So.2d 900 (Fla. 1974).
An examination of decisions rendered in other jurisdictions supports the conclusions stated herein. In Housing Authority v. City of Los Angeles, 243 P.2d 515 (Cal. 1952), a municipal housing authority sought a writ of mandamus to compel the city to perform certain specified acts contemplated by a cooperation agreement entered into between them pursuant to California's housing authorities law (which is similar to Ch. 421, F. S.). The city had adopted a resolution which declared a need for the housing authority to operate, and subsequently passed an ordinance approving the development and construction of a low income housing project.
It then entered into a cooperative agreement with the housing authority. [Section 1401(7)(b)(1) of the United States Housing Act (s. 42 U.S.C.A., s. 1401 et seq.) states that federal funds may not be expended for a housing project constructed pursuant to the act unless the governing body of the locality involved has entered into a cooperation agreement with the public housing authority.] Subsequently, the city passed a resolution canceling the cooperation agreement and setting aside the council's approval of the housing project. The court issued a writ of mandamus compelling the city to perform the acts stipulated in the cooperation agreement. In reaching its conclusion, the court rejected the city's contention that its action was justified because present conditions no longer necessitated the housing project:
 The city acted within its discretion in determining the local need for the functioning of the housing authority created by state act. All considerations of wisdom, policy and desirability connected with the functioning of a housing authority in the city . . . became settled adversely to the adherents of the city's present position by the actions of the state and of the city in declaring the existence of need. Upon the formation of the housing authority the state law thereupon and thereafter controlled the city and the housing authority and no other law concerning the acquisition, operation or disposition of property is applicable to the authority except as specifically provided. [243 P.2d at 519.]
Accord: State v. City Council of City of Helena, 242 P.2d 257
(Mont. 1952), holding that a city council may not collaterally impeach its finding of fact that there was a need for low income housing in the city.
Similarly, in City of Paterson v. Housing Authority of Paterson,233 A.2d 98 (N.J. 1967) a city sought to rescind the power theretofore given the authority to carry out redevelopment projects and transfer such undertakings to the city. The court noted that no stautory authority existed which would empower a municipality to effect a transfer of functions from the housing authority, and that no such authority would be implied. The court went further to note, at p. 105 of its opinion:
 To acknowledge that the city possesses the power it here purports to exercise is tantamount to a determination that it may dissolve the Authority almost at will. It is significant to note that in certain other statutes creating instrumentalities of a like nature and intended to perform functions similar to those entrusted to local housing authorities, the Legislature has made no specific provisions for dissolution . . . . The inclusion of such provisions in certain acts and their exclusion in others, when all of the statutes are directed toward effectuating a single public purpose and were all enacted at or about the same time lends strong support to the conclusion that such exclusion was purposeful. (Emphasis supplied.)
It is likewise significant to note that, in other jurisdictions, legislatures have provided for the dissolution of housing authorities by the appropriate governing body. See, e.g., 7 Gen. Law R. I. s. 45-25-32, providing either the housing authority or the governing body may apply to superior court for dissolution of the authority upon a showing of payment or satisfaction of all the outstanding obligations of the authority. The failure of the Florida Legislature to make provisions for the exercise of the authority. The failure of the the housing authority by the county commission following the adoption of the resolution finding and declaring a need for it to function in the county or to authorize the county to thereafter dissolve or terminate or suspend the functioning of a county housing authority further supports my view that a county may not do so by rescinding its earlier resolution declaring a need for the housing authority to function in the county or by adopting a new resolution stating that there is no longer any need for the housing authority to function in the county.
Your second question is answered in the negative.
Prepared by: Patricia R. Gleason Assistant Attorney General