Ralph KEEN, et al., Plaintiff,

v.

The UNITED STATES of
America, Defendant.

No. Civ.A. 97–01565(CKK).

United States District Court,
District of Columbia.

Aug. 7, 1997.

Charles W. Shipley, Shipley, Jennings & Champlin, P.C., Tulsa, OK, Judith Shapiro, Hobbs, Straus, Dean & Walker, Washington, DC, for Plaintiffs.

Steven Carroll, James J. Clear, Department of Justice, Environment & Natural Resources Division, Indian Resources Section, Washington, DC, for Defendants.

## MEMORANDUM OPINION

KOLLAR–KOTELLY, District Judge.

The Plaintiffs in the above-captioned case filed a complaint seeking a declaratory judgment and permanent injunction against the Bureau of Indian Affairs (BIA), alleging that the BIA, through its agents, took action in excess of its legal authority and contrary to federal and tribal law. Thereafter, the Plaintiffs filed a Motion for a Preliminary Injunction. The Defendants moved to transfer the case to the Eastern District of Oklahoma. In a separate pleading, the Defendants moved to dismiss the Complaint on the grounds that (1) the Plaintiffs had failed to state a cause of action against the Defendants; (2) the Cherokee Nation is an indispensable party that has not been named in the action, and (3) the Plaintiffs lack standing to bring this cause of action. The Plaintiffs filed Oppositions to both of the Defendants' Motions, and the Defendants filed a Reply to the Opposition to the Motion to Transfer. On August 5, 1997, the parties appeared before the Court for a hearing on the Motion to Dismiss, the Motion to Transfer, and the Motion for a Preliminary Injunction. The representations at the August 5, 1997, hearing, including the discussions with the Court, are incorporated into this Order. Upon considering the Motion to Dismiss, the Opposition thereto, the oral arguments on the Motion to Dismiss, the entire record herein, and the relevant law, the Court finds that the Plaintiffs have not established standing to maintain the instant cause of action. Accordingly, the Motion to Dismiss is GRANTED.

## I. BACKGROUND[1]

### A. THE COMPLAINT

The Plaintiffs, three Justices of the Cherokee Nation's Judicial Appeals Tribunal (the

---

1. In the Complaint, the Plaintiffs provide not only a summary of the facts that form the basis of their allegations in the Complaint, but a rather comprehensive history of the events leading up to the specific conduct of which they complain. Consequently, many of the facts mentioned in the

Tribunal), filed this action against the United States of America, the United States Department of the Interior Bureau of Indian Affairs, the Assistant Secretary of Indian Affairs Ada Deer, in her capacity as the Commissioner of Indian Affairs, the Deputy Commissioner of Indian Affairs Hilda Manuel, and James Fields, the Muskogee Area Director for the BIA. Pursuant to the Administrative Procedure Act, 5 U.S.C. § 702 (1994), the Plaintiffs seek judicial review of the BIA's final agency decision to reassume responsibility for law enforcement in the Cherokee Nation. Complaint ¶ 4.[2]

In summary, the Plaintiffs contend that the BIA's reassumption of the law enforcement program is invalid because the BIA did not follow the procedures required by 25 U.S.C. § 450m (1994),[3] for the reassumption of the Law Enforcement Program, and that as a result of this unlawful reassumption of the Law Enforcement Program, the "balance of powers among the three branches of the Cherokee Nation's constitutional government has been destroyed." Complaint ¶ 2. Furthermore, the Plaintiffs argue that upon reassuming the Law Enforcement Program, the BIA had an obligation to enforce tribal and federal laws, and that the BIA has failed to fulfill this obligation. Finally, Plaintiffs complain that the BIA assisted in the take-over of the Courthouse, and has prevented them from obtaining their personal property from the Courthouse.

As relief for these violations, the Plaintiffs seek (1) a declaratory judgment that the Defendants' actions were arbitrary, capricious, an abuse of discretion, and beyond their lawful authority; and (2) a permanent injunction ordering the Defendants to withdraw as law enforcement officers in the Cherokee Nation[4] until such time as they are legally requested to assume that role, and to cease preventing the Cherokee Nation Marshal's Service (the Marshal's Service) from performing its law enforcement duties, including but not limited to the service of pending bench warrants, orders of detention, and orders declaring the actions of the Principal Chief as unconstitutional; or alternatively; (3) a permanent injunction ordering the BIA to enforce the Tribunal Orders, including but not limited to service of warrants and orders issued by the Tribunal; (4) a permanent injunction ordering the Defendants to refrain from interfering with tribal governmental processes; and (5) any other just and appropriate relief.

## B. SUMMARY OF FACTS PRESENTED IN COMPLAINT AND PLEADINGS, AS SUPPLEMENTED AT THE ORAL HEARING ON AUGUST 5, 1997

The following is a summary of the undisputed and/or uncontroverted facts as adduced in the Complaint, pleadings, and at the hearing.

Complaint are not relevant to the Court's determination of the Motion to Dismiss for lack of standing. Thus, the Court will summarize only those facts that are dispositive to the instant Motion.

2. On July 2, 1990, the United States and the Cherokee Nation executed a Compact on Self–Governance. As explained by the parties during oral argument, this Compact allowed the Cherokee Nation to assume from the federal government the control of federal programs in the Cherokee Nation, which included law enforcement. On May 13, 1991, the Cherokee Nation, the United States of America, the State of Oklahoma and its political subdivisions, the various board of county commissioners, and various law enforcement agencies entered into a compact, whereby the parties agreed to the cross-commissioning of law enforcement peace officers.

3. Reassumption of a program occurs when the Secretary of the Department of Interior "rescind[s a] contract or grant agreement, in whole or in part, and assume[s] or resume[s] control or operation other program, activity, or service involved." 25 U.S.C. § 450m (1994). The BIA unilaterally may reassume a program on either an non-emergency basis or an emergency basis. *See* 25 U.S.C. § 450m; 25 C.F.R. 900.247. Section 450m provides that the BIA shall provide notice to the "tribal organization, and the tribe served by tribal organization." 25 U.S.C. § 450m. Additionally, the BIA "shall provide the tribal organization with a hearing on the record." *Id.* At the hearing, the Parties explained the procedures set out in § 450m have been incorporated into the Compact.

4. There is a dispute as to whether the Marshals were fired lawfully.

The Plaintiffs allege that on April 15, 1997, eight of fifteen Cherokee Nation Tribal Council (Tribal Council) members convened a meeting called by Principal Chief Joe Byrd. Complaint ¶ 19. At this April 15, 1997, meeting the eight Tribal Council members and Principal Chief Byrd passed a resolution agreeing to request the BIA to institute a replacement contingent of law enforcement officers for a period of time up to eight weeks. *Id.* ¶ 18. Also on April 15, 1997, several citizens in the Cherokee Nation filed suit against the Chief and the Tribal Council challenging the legality of the April 15, 1997, meeting. *Id.* ¶ 19.[5]

On April 18, 1997, Assistant Secretary Deer, who is the Assistant Secretary of Indian Affairs, sent a letter to Principal Chief Byrd advising him that the BIA had concluded that there was an imminent jeopardy to the public safety within the Cherokee Nation's Indian country jurisdiction. Assistant Secretary Deer informed Principal Chief Byrd that the BIA would reassume the Law Enforcement Program effective immediately, and would continue the reassumption until the Department of the Interior was satisfied that the conditions creating the imminent jeopardy were resolved. *Id.* ¶ 24; *see also* Ex. M of Pls.' Mot. for Prelim. Inj.

In her letter, Assistant Secretary Deer set out the facts that supported the BIA's finding of imminent jeopardy: the "confirmed reports that calls for law enforcement services are not being responded to;" the "strong recommendation of the Muskogee Area Director and the concurrence of the Deputy Commissioner Indian Affairs that the program should be assumed on a temporary basis;" the county sheriff would not respond to calls for law enforcement due to "questions regarding the authenticity of the cross-commissioning from the Cherokee Nation[, which is] a clear indication that law enforcement coverage is inadequate;" the "existence of two armed Cherokee marshal services representing opposing political factions [which has] created confusion, disorder, and fear

among the Cherokee population;" and the declaration of a state of emergency issued by a majority of the Tribal Council and the Principal Chief. In this letter, Assistant Secretary Deer informed the Principal Chief that the Nation had a right to a hearing on this decision within 10 days. *Id.*

On April 24, 1997, the Tribunal, of which the Plaintiffs are members, ruled that the April 15, 1997, meeting was convened contrary to Article V, § 5 of The Cherokee Nation Constitution, which provides that "[n]o business shall be conducted by the Tribal Council, unless at least two-thirds of the members thereof regularly elected and qualified shall be in attendance, which members constitute a quorum." *Id.* ¶¶ 22–23. The Order further ruled that the members met without having published the required ten day notice. *Id.* The Order declared that "all decisions rendered at such meeting are void and illegal" and enjoined the Tribal Council members from taking any action pursuant to the illegal meeting and declared that the meeting was unconstitutional and that the resulting request for the BIA's assistance was null and void. *Id.*

On May 2, 1997, the Tribunal issued show cause orders to the Principal Chief and Deputy Chief, directing them to appear before the Tribunal on May 27, 1997. *See* Complaint at 8 n. 2. On May 27, 1997, the Principal Chief and the Deputy Chief did not appear before the Tribunal and the Tribunal issued warrants for their arrest.[6] *Id.* The Plaintiffs allege that the BIA has not served these bench warrants, and improperly relied on the ultra vires actions of Principal Chief Byrd and the Tribal Council, despite the fact that the Tribunal issued an Order declaring the actions of Principal Chief Byrd and the Tribal Council as unconstitutional.

In the Complaint, the Plaintiffs alleged summarily that the BIA, as well as the alleged personal security force of Principal Chief Byrd, took physical control of the Courthouse on June 20, 1997. They further

---

5. These persons claimed that the meeting was not held in accordance with the requirements Article V, §§ 4, 5 of The Cherokee Nation Constitution. *See* The Cherokee Nation Constitution, Ex. A of Pls.' Mot. for Prelim. Inj.

6. On May 3, 1997, the Tribal Council and Principal Chief Byrd voted to impeach the Tribunal. The lawfulness of this impeachment is in dispute.

allege that the BIA has prohibited the Tribunal from entering the building either to hold court or to obtain their personal property. In support of these factual allegations, the Plaintiffs referred the Court to several affidavits of persons who were either present at the time that the BIA appeared at the Courthouse on June 20, 1997, or who arrived within a few hours thereafter. *See* Exs. 3, 5, 6, 7, 8 of the Pls.' Mot. for Prelim. Inj. The Plaintiffs also relied on the affidavits of the Plaintiffs to substantiate these factual allegations. *See* Exs. 2, 4, 9 of the Pls.' Mot. for Prelim. Inj. At the hearing the Plaintiffs produced another affidavit of Justice Dwight Birdwell, which they claim is further support for their version of the incident at the courthouse. *See Hearing Ex. 1.*

During oral argument, the Court noted that the affidavits of the Plaintiffs did not indicate that the Plaintiffs were present at the Courthouse on June 20, 1997. Counsel for the Plaintiffs conceded that the Plaintiffs did not attempt to enter the Courthouse on June 20, 1997, and were in fact not even present on June 20, 1997. The Plaintiffs did not attempt to gain access to the Courthouse until three days later. In addition, Counsel for the Plaintiffs indicated that when the Plaintiffs arrived at the Courthouse on June 23, 1997, they found the Courthouse locked, and that it was Principal Chief Byrd's personal security forces, not the BIA, who prevented them from entering the building. Counsel further indicated that the BIA was not present at the Courthouse when the Plaintiffs arrived.

### C. THE COURT'S FINDINGS AS TO THE EVENTS AT THE COURTHOUSE ON JUNE 20, 1997

Upon reviewing the information provided to the Court in the Complaint, pleadings, and oral argument, the Court makes the following findings as to the events surrounding the June 20, 1997, incident at the Courthouse:

According to all accounts of the events that occurred on June 20, 1997, the personal security forces of Principal Chief Byrd acted alone in taking control of the Courthouse at approximately 4:00 a.m. on June 20, 1997. *See* Affidavit of Patrick M. Ragsdale, Ex. 4, ¶ 17, of Pls.' Mot. for Prelim. Inj.; Affidavit of Sharon Wright, Ex. 9, ¶ 8 of Pls.' Mot. for Prelim. Inj.; Incident Report of Perry Proctor (Incident Report), Ex. B of Def.'s Mot. to Dismiss. The County Sheriff's office requested the assistance of the BIA in preventing an armed conflict between Principal Chief Byrd's security force, and two members of the Marshal's Service who were also present in the Courthouse. *See* Incident Report. The State District Attorney directed the actions of the Cherokee County Sheriff's deputies in cordoning off the Courthouse. *See* Incident Report; A.F. of Catwalk Smith, ¶¶ 2, 4; A.F. of William Ragsdale, Ex. 4, ¶ 19.

At the oral argument, Counsel for the Defendants did not contest the fact that the BIA, specifically Perry Proctor, prevented people from entering the building, and requested the two former members of the Marshal's Service to exit the building. *See* Incident Report. Both parties agreed that eventually the BIA assisted in returning the personal property to the Marshals, facilitated turning over investigative papers to the United States Attorney, and accepted the equipment from the former members of the Marshal's Service. *See id* .

### II. MOTION TO DISMISS

The Defendants contest the standing of the Plaintiffs to assert the claims set forth in the Complaint.[7] The Defendants argue that the Plaintiffs have no individual right to challenge the decision of the BIA to reassume the law enforcement program of the Cherokee Nation. The Defendants further argue that the BIA has not taken any actions to thwart the Tribunal from functioning. They argue that the BIA submitted the arrest warrants for review to the Solicitor of the BIA in order to determine whether the BIA has the jurisdiction to serve the warrants, and claim that they have not prevented anyone else from serving the warrants. The Defendants have not addressed whether the

---

**7.** In the Motion to Dismiss, the Defendants offer additional grounds for dismissal. As noted above, however, this Order does not address those bases for dismissal.

Plaintiffs have standing to assert a claim that the BIA has withheld their property.

The Plaintiffs argue that they have standing to challenge the reassumption of the law enforcement based on three grounds. First, they claim that their rights of tribal self-government and tribal self-determination have been compromised by the BIA's non-compliance with the statutory and regulatory requirements of reassumption. Second, they claim that the fact that the BIA has failed to enforce the orders and warrants issued by the Tribunal has removed their authority to ensure that there is compliance with tribal constitutional law. Finally, the Plaintiffs allege that the BIA has prevented them from entering the Courthouse to recover their personal property. The Plaintiffs seek review of the BIA's actions pursuant to 5 U.S.C. § 702. This Court has jurisdiction to entertain this federal questions pursuant to 28 U.S.C. § 1331 (1994).

## ANALYSIS

The Plaintiffs bear the burden of establishing that they have standing to bring the instant cause of action. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. at 2136–37 (1992); *Warth v. Seldin*, 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975). In deciding whether to dismiss the case based on a lack of standing, the Court is required to " 'construe the complaint in favor of the complaining party.' " *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49, 55 (D.C.Cir.1991) (quoting *Warth*, 422 U.S. at 501, 95 S.Ct. at 2206–07). The requirements of standing, however, are not simply pleading requirements but are "an indispensable part of the plaintiff's case [and] each must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.* with the manner and degree of evidence required at the successive stages of litigation." *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136–37.

Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." *Id.* at 560, 112 S.Ct. at 2136. The Plaintiffs have standing only if they allege that (1) they have suffered a personal injury that is concrete and particularized, and not conjectural or hypothetical, but actual and imminent, *id.;* (2) that this injury is traceable to the Defendants' allegedly unlawful conduct, *see Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324–25, 82 L.Ed.2d 556 (1984); and (3) that the injury is likely to be redressed by the requested relief. *Id.; see also Animal Legal Defense Fund, Inc. v. Espy*, 23 F.3d 496, 498 (D.C.Cir.1994). Upon considering the three bases of standing proffered by the Plaintiffs, the Court concludes that they have no standing to assert this cause of action against the Defendants.

1. The Plaintiffs do not have standing based on an injury to the rights of self-determination or self-governance.

■ The letter from Assistant Secretary Deer clearly establishes that the BIA proceeded to reassume the law enforcement functions based on the emergency provisions of 25 U.S.C. § 450m. This provision requires that the Secretary of the Interior, when making an emergency reassumption of a program, must give notice thereof to "the tribal organization, and the tribe served by the tribal organization." 25 U.S.C. § 450m. The statute also provides that "the Secretary shall provide the tribal organization with a hearing on the record within ten days or such later date as the tribal organization may approve." *Id.*

■ The Plaintiffs attempt to establish standing to challenge the BIA's compliance with this statute by arguing that the BIA, in failing to conduct a hearing before the tribal organization,[8] has deprived the Cherokee Nation and them personally of the right of self-governance and self-determination. The Plaintiffs claim only that the BIA had a duty

---

8. Section 450b(*l*) defines a tribal organization as "the recognized governing body of any Indian tribe; any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body or which is demo-

cratically elected by the adult members of the Indian community to be served by such organization and which includes the maximum participation of Indians in all phases of its activities."

to hold a hearing,[9] and that in failing to hold the hearing,[10] the Nation as well as themselves have been deprived of the right to self-governance and self-determination. The Plaintiffs do not argue that they personally were entitled to a hearing, nor can they make such a claim.[11] Thus to the extent that they ground their claim of injury solely in the government's failure to comply with the statute, standing cannot exist because simply claiming a right to "to have the Government act in accordance with the law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen,* 468 U.S. at 754, 104 S.Ct. at 3326.

The injury claimed by the Plaintiffs is abstract, and could be raised by any member of the Cherokee nation on their own behalf or on behalf of the Nation. The alleged denial of the abstract right of self-determination or self-governance cannot support the standing to sue. *See id.* (finding no standing where plaintiffs alleged abstract claim that they had suffered a "stigmatizing injury often caused by racial discrimination"); *Valley Forge v. Americans United,* 454 U.S. 464, 486–87, 102 S.Ct. 752, 765–77, 70 L.Ed.2d 700 (1982) (finding no standing where the injury alleged was only that the Establishment Clause had been violated by the government's transfer of land to a church-related college); *Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d 343 (1975) (finding no standing for plaintiffs alleging that Reserve membership of Members of Congress violated the Incompatibility Clause because such claim amounted to no more than a "a gener-

alized interest of all citizens in constitutional governance," and such an injury was abstract, not concrete and particular). Without finding that the Plaintiffs have suffered a concrete or particularized injury, the Court is precluded from finding standing. *Lujan,* 504 U.S. at 561, 112 S.Ct. at 2136–37.

▪ Furthermore, the rights of self-determination and self-governance, of which the Plaintiffs claim they have been deprived, are held generally by the people of the Cherokee Nation. This fact also prevents the Court from finding that the Plaintiffs have alleged a particularized and concrete injury because "where the asserted harm is a generalized grievance shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction." *Warth,* 422 U.S. at 499, 95 S.Ct. at 2205. "The term 'generalized grievance' does not just refer to the number of persons who are allegedly injured; it refers to the diffuse and abstract nature of the injury." *Akins v. Federal Election Comm.,* 101 F.3d 731, 737 (1997); *see Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 220, 94 S.Ct. 2925, 2931–32 (1974) (finding that plaintiffs who sought to have the judiciary compel the executive to comply with the Incompatibility Clause had alleged only a "generalized interest of all citizens in constitutional governance [which is] an abstract injury" insufficient to support standing). The Court concludes that the Plaintiffs' first basis for standing is insufficient because they

---

**9.** The statute also requires the BIA to give notice to the "tribal organization, and the tribe served by the tribal organization." 25 U.S.C. § 450m. The Plaintiffs agreed with the government that the BIA notified Principal Chief Byrd of the reassumption, and that Principal Chief Byrd was designated in the Compact of Self–Governance as the official entitled to receive such notice. The Plaintiffs thus did not claim that the BIA failed to give notice.

**10.** Principal Chief Byrd and a majority of the Tribal Council passed a resolution waiving the hearing, and thus no hearing took place. The Plaintiffs did not challenge that the hearing could be waived. Rather, they claimed that the resolution was invalid because the Tribal Council did not have a quorum at the time that it was passed. The Plaintiffs argued that the BIA had a respon-

sibility to ensure that a hearing was held or that in the event of a waiver, that the waiver was valid. This argument, however, is superfluous because notwithstanding the reason that the hearing was not held, these Plaintiffs have not established the injury element of standing.

**11.** As noted above, the Plaintiffs agreed that there was notice to the proper party. Additionally, the Plaintiffs did not argue that they personally were entitled to have the hearing. Such an argument would run contrary to § 450m, which directs that a hearing shall be held before the tribal organization, and § 450b(*l*), which defines the tribal organization as the governing body; i.e., the Tribal Council. The Plaintiffs argued only that the BIA should not have accepted Principal Chief Byrd's waiver of the hearing.

have alleged an abstract injury and have no more than a generalized grievance.[12]

2. The Plaintiffs do not have standing based on the BIA's alleged failure to serve the Tribunal's arrest warrants, or comply with its other orders.

■ The Plaintiffs argue that by failing to serve the arrest warrants, and failing to acknowledge their Orders which declared as invalid the acts of the April 15, 1997 Tribal Council, the BIA has abrogated their authority to act as a tribunal. At the hearing, the Plaintiffs relied on *Raines v. Byrd,* —— U.S. ——, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997), in support of this argument.

*Raines,* however, is inapposite. In *Raines,* the Plaintiffs filed a complaint against the Secretary of the Treasury and the Director of the Office of Management and Budget. *See id.* at ——, 117 S.Ct. at 2313–17. The Plaintiffs were Senators and Congressmen who voted against the Line Item Veto Act (Act). *See id.* They challenged the constitutionality of the Act as an unconstitutional expansion of the President's power. *See id.* They also alleged that the Act granted the President the authority to cancel a provision of a federal law, which had the effect of allowing the President to repeal a law without meeting the requirements of bicameral passage and presentment. *See id.*

In considering the issue of legislative standing, the Supreme Court held that the plaintiffs did not have standing to challenge the Act. In so holding, the Court rejected the plaintiffs' argument that the Act injured them " 'directly and concretely ... in their official capacities' " by nullifying their votes. *Id.*

The *Raines* plaintiffs, relying on *Coleman v. Miller,* 307 U.S. 433, 59 S.Ct. 972, 83 L.Ed. 1385 (1939), argued that the Act had the effect of nullifying their votes. The Court found that the plaintiffs alleged neither that they had been treated differently from other members of the legislature, nor that they had been deprived of a personal entitlement. *Raines,* —— U.S. at ——, 117 S.Ct. 2312, 138 L.Ed.2d 849. Rather, the plaintiffs' claim amounted to only a loss of their political power. The Supreme Court held that the plaintiffs' votes "were given full effect [but] [t]hey simply lost that vote." *Id.* at ——, 117 S.Ct. at 2313–17.

The Plaintiffs in the instant case argue that the *Raines* case supports their position because they, unlike the *Raines* plaintiffs, can show that the governmental act at issue nullifies their power. The Court finds that *Raines* in fact supports a finding that the Plaintiffs do not have standing to challenge the BIA's alleged decision not to serve the warrants. The Plaintiffs, like those in *Raines,* have not been deprived of their authority to issue orders or pass on the legality of executive action. They assert an injury to their interest in having the BIA execute their orders, but not in their right or ability to issue those orders. The former is an interest that is shared by all in the Cherokee nation, and thus is nothing more than "a generalized grievance[ ] about the conduct of government." *American Federation of Government Employees v. Pierce,* 697 F.2d 303, 305 (D.C.Cir.1982) (holding that a congressman did not have standing to challenge the execution of the law because such a claim is a generalized grievance). Rather than being

---

12. The Plaintiffs articulated a related argument at the hearing. The Plaintiffs argued that the BIA unlawfully accepted an invalid resolution of the Tribal Council, which amended the Annual Funding Agreement to provide for the reprogramming of funds for law enforcement through an amendment to the Annual Funding Agreement. The resolution, according to the Plaintiffs, is infirm because a quorum was not present for the vote. This claim, as well as the argument that the BIA has breached a trust responsibility owed to the nation as a whole, are insufficient to maintain standing for the same reasons that the Plaintiffs' argument regarding the failure to hold a hearing did not support standing.

. Additionally to the extent that the Plaintiffs' claim with respect to the Annual Funding Agreement could be characterized as a complaint that they have been deprived of property, it is unclear on this record whether or not the Cherokee Nation has reimbursed the BIA for the reassumption of the law enforcement. Nonetheless, the Plaintiffs do not have an individual interest in tribal funds, and cannot argue that the reimbursement of these funds to the BIA deprived them of the right to tribal funds. *See Seneca Constitutional Rights Org. v. George,* 348 F.Supp. 51, 58 (W.D.N.Y.1972).

denied the right to act as a member of the tribunal, the Plaintiffs simply have lost their political power. Thus, the Plaintiffs, as in *Raines,* have not articulated a particular and concrete injury upon which standing may be grounded.

3. The Plaintiffs lack standing based on an the allegation that the BIA has deprived them of their personal property.

 The Plaintiffs claim that the BIA denied other persons access to the Courthouse during a discrete period of time in which there was a potential armed conflict, to which the BIA responded at the request of the County Sheriff's Office. The Plaintiffs argue that from these facts, the Court can conclude that they have been locked out of the Courthouse as a result of the BIA's actions. Yet the Plaintiffs conceded that when they attempted to enter the Courthouse on June 23, 1997, the BIA was not present, and the BIA took no action to prevent them from entering the Courthouse that day. Apparently, it was Principal Chief Byrd's personal security force who prohibited their access on June 23, 1997.

The Plaintiffs' argument that the BIA is the cause of their inability to obtain their property is undercut greatly by the fact that the BIA did not participate in the take over of the Courthouse; that the BIA was present at the scene only at the request of the County Sheriff's office; that the BIA was part of a joint law enforcement action to prevent an armed conflict; that the BIA was present at the courthouse only for as long as it took to diffuse the potential for an armed conflict; that the BIA left the building on June 20, 1997; that the BIA did not lock the building upon its departure; and that the BIA has not returned to the Courthouse since June 20, 1997.

 Traceability does not exist if the injury is the " 'result [of] the independent action of some third party not before the court.' " *Defenders of Wildlife,* 504 U.S. at 560–61, 112 S.Ct. at 2136–37 (quoting *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 41–42, 96 S.Ct. 1917, 1925–26, 48 L.Ed.2d 450 (1976)); *see also Bennett v.*

*Spear,* —— U.S. ——, ——, 117 S.Ct. 1154, 1164, 137 L.Ed.2d 281 (1997). Causation may exist, however, where "the injury [is] produced by [the] determinative or coercive effect upon the action of someone else." *Bennett,* —— U.S. at ——, 117 S.Ct. at 1164.

The facts of this case do not support a finding that the current lock-out of the Courthouse by the security force of the Principal Chief is fairly traceable to the BIA. The BIA assisted the Sheriff in diffusing a conflict between two members of the Marshal's Service and the security forces of Principal Chief Byrd. The Plaintiffs have been deprived of their property by the independent actions of the personal security forces of Principal Chief Byrd. The BIA's assistance to the County Sheriff cannot be considered as having "the determinative or coercive effect" upon the decision of the personal security force of Principal Byrd to lock the Courthouse and deny them access to their personal property. In this case, the Plaintiffs argument on causation fails because "[t]he links in the chain of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain [the Plaintiffs'] standing." *See Allen,* 468 U.S. at 757–58, 104 S.Ct. at 3327–28.

 Not only do the Plaintiffs fail to meet the traceability element of standing as to this ground for standing, they also fail to meet the redressability requirement. Redressability "examines the causal connection between the alleged injury and the judicial relief requested." *Allen,* 468 U.S. at 753 n. 19, 104 S.Ct. at 3325. As relief, the Plaintiffs seek to have the BIA withdraw. The Plaintiffs have failed to show how the withdrawal of the BIA will provide them with their property. The persons in actual control of the Plaintiffs' property are not parties to this action, and thus would not be obligated to observe the Court's ruling in this case. *See Defenders of Wildlife,* 504 U.S. at 570, 112 S.Ct. at 2141–42. The relief requested in this case, namely the return of property held by persons not party to this action, goes "well beyond the violation of the law alleged" by the Plaintiffs. *Allen,* 468 U.S. at 753 n. 19, 104 S.Ct. at 3325 n. 19.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that the Plaintiffs have failed to meet their burden of establishing standing to challenge the BIA's decision to reassume the law enforcement program. Accordingly, the Court shall dismiss the above-captioned case. The Court shall issue an Order consistent with the foregoing Memorandum Opinion.