[769 NYS2d 518]

SHELDON SILVER, as Member and Speaker of the New York State Assembly, et al., Appellants, v GEORGE E. PATAKI, as Governor of the State of New York, Respondent.

First Department, December 11, 2003

## APPEARANCES OF COUNSEL

*Weil, Gotshall & Manges LLP,* New York City, (*Steven Alan Reiss, Gregory S. Coleman, Janet L. Horn, Kristyn Noeth, Hope L. Karp* and *Gregg J. Costa* of counsel), for Sheldon Silver, Member and Speaker, New York State Assembly, appellant.

*Hancock & Estabrook, LLP,* Syracuse (*Stewart F. Hancock, Jr.* and *Sonya G. Bonneau* of counsel), for New York State Senate, appellant.

*Cravath, Swaine & Moore LLP,* New York City (*Max R. Shulman* of counsel), for George E. Pataki, Governor, respondent.

## OPINION OF THE COURT

GONZALEZ, J.

This appeal involves a dispute between the executive and legislative branches of our state government over their respective powers of appropriation under the New York State Constitution. Our analysis of the controversy is guided by certain amendments to our State Constitution adopted in 1927 that transferred primary responsibility for creating a budget from the Legislature to the Executive. We find that the actions taken by the Legislature in this case clearly violated the non-alteration provision of article VII, § 4 of the State Constitution which, if upheld, would seriously undermine the 1927 constitutional amendments adopting an executive budget system for this State. Accordingly, we affirm Supreme Court's grant of summary judgment to the Governor. In light of this holding, we also agree with Supreme Court that the constitutionality of the Governor's exercise of line-item vetoes in this case need not be addressed.

On January 20, 1998, Governor George E. Pataki submitted his executive budget to the Legislature consisting of 12 budget bills, six of which included the Governor's proposed appropriations (*see* NY Const, art VII, §§ 2, 3). Thereafter, the Legislature took various actions with respect to the Governor's appropriation bills, not at issue here, such as striking out or reducing certain items or adding separate new items of appropriation (*see* NY Const, art VII, § 4). Ultimately, the Legislature approved each of the Governor's appropriation bills.

Notwithstanding its approval of his appropriation bills, the Legislature amended three of the Governor's so-called "non-

appropriation bills" in ways that had the effect of modifying some of the Governor's appropriations by reallocating or itemizing such appropriations, or conditioning them on subsequent legislative action.[1] The Legislature accomplished this by inserting language in the non-appropriation bills that cross-referenced the Governor's items of appropriation in his appropriation bills, and then adding the modifying or conditional language.

The Legislature's actions are illustrated by two examples. First, the Governor proposed a $180 million appropriation for the Department of Correctional Services for "the development of a new 750 cell maximum security facility to be located in the county of Franklin." Incorporating the language of this appropriation into a non-appropriation bill verbatim, the Legislature added the condition that "no funds shall be availabe for the purpose of such appropriation from any source until a subsequent chapter of the laws of 1998 is enacted which allocates and authorizes the disbursement of such funds." Second, the Governor proposed a $17 million lump-sum appropriation for the Office of Real Property Services to be used for local administration of the STAR tax relief program. The Legislature, by the same method of cross-referencing the Governor's item of appropriation and adding modifications to it in a non-appropriation bill, segregated the lump-sum appropriation and directed that certain amounts be made available to specific entities for express purposes.

With respect to these legislative amendments and the 53 others that altered the Governor's appropriations in similar fashion, the Governor struck these amendments by exercising his line-item veto pursuant to article IV, § 7 of the State Constitution.[2]

In June 1998, plaintiff Sheldon Silver, the Speaker of the New York State Assembly, commenced the instant action challenging the Governor's use of the line-item veto against the 55 amendments that do not themselves constitute items of appropriation. Litigation ensued over the Governor's challenge to the Speaker's standing and capacity to sue, which resulted in a July 2001 Court of Appeals ruling in the Speaker's favor (see Silver v Pataki, 96 NY2d 532 [2001]).

---

**1.** The Court of Appeals has noted that the term "non-appropriation" bill is not found in the State Constitution (Silver v Pataki, 96 NY2d 532, 535 n 1 [2001]).

**2.** The parties stipulated before the motion court to focus on 13 "representative" vetoes, instead of the actual 55 exercised by the Governor.

Upon conclusion of the appellate proceedings, both parties moved for summary judgment in Supreme Court, relying on two key provisions of our State Constitution. Plaintiffs argued that under article IV, § 7 of the Constitution, the Governor may only exercise his line-item veto against "items of appropriation of money," which, according to the Speaker, does not include amendments to non-appropriation bills. Article IV, § 7 states in pertinent part: "If any bill presented to the governor contain *several items of appropriation of money*, the governor may object to one or more of such items while approving of the other portion of the bill" (emphasis added).

For his part, the Governor relies on what has come to be known as the "non-alteration" provision in article VII, § 4 of the Constitution, which restricts the power of the Legislature to alter an appropriation bill submitted by the Governor to three specified circumstances. Section 4 provides:

> "The legislature may not alter an appropriation bill submitted by the governor except to strike out or reduce items therein, but it may add thereto items of appropriation provided that such additions are stated separately and distinctly from the original items of the bill and refer each to a single object or purpose."

In the order appealed from, the motion court granted the Governor's motion for summary judgment and declared that the provisions he line-item vetoed were unconstitutionally enacted by the Legislature and, thus, were void. The court reasoned that since the legislative amendments altered "when, how or where" the appropriated money could be spent, they were part of the Governor's "items of appropriation," and therefore were subject to the no-alteration restriction of article VII, § 4. The court stated that "[b]y inserting these [alterations] that affect appropriations in bills that do not appropriate money, but which refer to bills that do appropriate money, the Legislature impermissibly attempted to do indirectly that which could not be done directly." (192 Misc 2d 117, 126 [2002].) It also held that in light of its determination that the vetoed provisions were not constitutionally adopted, there was no need to determine whether the items were unconstitutionally vetoed.

On appeal, the Speaker and the New York State Senate (Senate) argue that the Governor's line-item veto power is limited by the Constitution to "items of appropriation of money," and that the legislative amendments of the non-appropriation bills

at issue here do not fall within that definition.[3] In addition, they assert that the non-alteration provision of article VII, § 4 does not restrict the Legislature from altering the Governor's non-appropriation bills, and therefore the provisions at issue were constitutionally enacted. Finally, they claim that the court erroneously failed to rule on the main issue in this case, namely, the constitutionality of the Governor's line-item vetoes. We disagree with each of these contentions and affirm the order on appeal.

The present dispute between the executive and legislative branches is the latest in the ongoing process by which they seek to define their respective budgetary powers under the Constitution. In our tripartite form of government, it is the judicial branch that has the constitutional obligation and duty, by interpreting the intent of the framers, to define the respective powers of the legislative and executive branches in the budget process (*see Saxton v Carey*, 44 NY2d 545, 551 [1978] ["courts will always be available to resolve disputes concerning the scope of that authority which is granted by the Constitution to the other two branches of the government"]). In the context of prior budget disputes, the Court of Appeals has already undertaken this definitional process.

For instance, in *People v Tremaine* (252 NY 27 [1929] [*Tremaine* I]), the Governor included within a supplemental budget bill certain segregations of funds (i.e., itemized lists of positions and salaries) appropriated in a companion budget bill. The Legislature amended the Governor's bill that included the segregations to require that the segregations also be approved by the chairpersons of the Senate Finance Committee and Assembly Ways and Means Committee. In dicta, the Court of Appeals stated that the Legislature's insertion of its own segregation provision was "improper" because former article IV-A, § 3 of the State Constitution, predecessor to the non-alteration provision of article VII, § 4, limited the Legislature's options to striking out or reducing the Governor's items of appropriation or adding a new separately stated item (*id.* at 49).

Next, in *People v Tremaine* (281 NY 1, 6-7 [1939] [*Tremaine* II]), the Legislature eliminated the Governor's itemized appropriations and replaced them with lump-sum appropriations for the same purpose. The Court of Appeals found that the

---

**3.** After the motion court's ruling, the Senate moved to intervene and for reargument of the summary judgment motions. By stipulation, the parties agreed to allow the Senate to intervene as party plaintiff nunc pro tunc and that there would be no reargument.

Legislature had impermissibly "substituted" one item for a group of other items in violation of article VII, § 4.

The Court of Appeals' holding in *New York State Bankers Assn. v Wetzler* (81 NY2d 98 [1993]) further reaffirmed that the Legislature's options with respect to the Governor's appropriations are severely restricted, even where the Governor does not object to the alterations. In *Bankers*, the Legislature added an audit fee provision, which authorized an assessment of fees against banks for the cost of their own tax audits. This provision was not part of the budget bill originally submitted by the Governor, but he did not object and signed the bill into law. In refusing to ignore the Legislature's "outright disregard" for the constitutional limitations imposed on it by article VII, § 4, the Court of Appeals stated: "The constitutional command is unambiguous. The Legislature '*may not* alter an appropriation bill . . . except to strike out or reduce items therein, but it *may add* thereto items of appropriation' (. . . [emphasis added])" (*id.* at 104).

Plaintiffs attempt to distinguish these cases on the basis that because the 1998 legislative amendments at issue here did not alter the Governor's appropriation bills, there was no violation of *Tremaine* I, *Tremaine* II and *Bankers*. They assert that because the amendments were included in "non-appropriation" bills, and not in an "appropriation bill submitted by the governor" (NY Const, art VII, § 4), no violation of article VII, § 4 occurred.

In a related argument, the Senate maintains that the Governor submits two types of budget bills—appropriation bills that appropriate money and set forth purposes, and non-appropriation bills that contain substantive programmatic, "when, how or where" measures, to which the Legislature can constitutionally make additions or alterations.

Plaintiffs' attempt to draw a distinction between the Governor's appropriation bills on the one hand, and the "when, how or where" directory language found in a non-appropriation bill on the other, is not convincing. Indeed, there is ample authority supporting the Governor's argument that the "when, how or where" directory language, whether in an appropriation bill or not, is part of an item of appropriation. In *Saxton v Carey* (44 NY2d 545, 550 [1978], quoting *Hidley v Rockefeller*, 28 NY2d 439, 444 [1971] [Breitel, J., dissenting]), which involved a lawsuit challenging the 1978-1979 budget as insufficiently itemized, the Court of Appeals suggested that an item appropriating

$5,000,000 for the construction of a specific highway might lack sufficient itemization in the absence of some indication of "when, how or where" the expressway or segments of it would be constructed. Obviously, the *Saxton* court considered this type of directory language, if required by the circumstances, to be an integral part of the item of appropriation.

Other New York decisions have also recognized that "items of appropriation" are not limited to dollar amounts and purpose (*see Schuyler v South Mall Constructors*, 32 AD2d 454, 456-457 [1969] [language in an appropriation bill authorizing the Commissioner of General Services to negotiate a construction contract was constitutional]; *Rice v Perales*, 156 Misc 2d 631, 640 [1993], *mod on other grounds* 193 AD2d 1135 [1993] [language in appropriation bill authorizing Commissioner of Social Services to enact regulations to revise budget methodology was properly placed within such bill]).

In addition, the language of article VII, § 6, which requires that all provisions within the Governor's appropriation bills "relate[ ] specifically to some particular appropriation in the bill, and any such provision shall be limited in its operation to such appropriation," provides further support that the Governor's items of appropriation include not just the appropriation itself, but also may include directory or programmatic language that it is integrally related to it. Although it is true that here, the amendments were part of non-appropriation bills, the relatedness requirement of section 6 supports the idea that "items of appropriation" properly include both the appropriation itself (amount and purpose) as well as directory provisions relating to the appropriation ("when, how or where").

Ultimately, however, our holding rests on the language and purpose of article VII, § 4. We read the explicit language of section 4 to prohibit alterations *by any means* of "an appropriation bill submitted by the governor" (NY Const, art VII, § 4), not just by means of an alteration to the bill itself or by passage of a different appropriation measure. Since the provision in article VII, § 4 recites the three permissible methods of alteration by the Legislature, the principle of expressio unius est exclusio alterius should be applied and permits this Court to construe the listed methods as exclusive (*see Matter of Jewish Home & Infirmary v Commissioner of N.Y. State Dept. of Health*, 84 NY2d 252, 262 [1994], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 240, at 412-413 ["where a statute creates provisos or exceptions as to certain matters the inclusion of such provisos

or exceptions is generally considered to deny the existence of others not mentioned"]).

Moreover, we are unable to discern in plaintiffs' assertions any constitutional basis for the Legislature's alteration of items of appropriation outside the appropriation bill affected by those alterations. They have failed to identify any provision that grants to the Legislature the right to modify an item of appropriation outside the appropriation in which it is contained, other than a reference to the general legislative power conferred to it by article III, § 1 of the State Constitution. There is a good reason for that failure: the framers of the Constitution did not mean to grant the Legislature carte blanche to modify appropriations at will in some other piece of legislation.

To conclude otherwise would allow plaintiffs to accomplish by indirection something which the Constitution directly forbids and would "violate[ ] the spirit of the fundamental law" (*Wein v State of New York*, 39 NY2d 136, 145 [1976], quoting *People ex rel. Burby v Howland*, 155 NY 270, 280 [1898]). It would also fatally undermine the non-alteration provision of article VII, § 4 and the other amendments adopting the executive budget system.

Finally, Supreme Court properly declined to rule on the constitutionality of the Governor's exercise of the line-item veto to strike the provisions that had been unconstitutionally enacted. Indeed, in light of this finding, any ruling respecting the propriety of the Governor's use of the line-item veto to strike the disputed provisions would have constituted an improper advisory opinion (*see T.D. v New York State Off. of Mental Health*, 91 NY2d 860, 862 [1997]; *People v Tremaine*, 252 NY 27, 46 [1929]).

Plaintiffs' other contentions have been examined and found unavailing.

Accordingly, the amended judgment, Supreme Court, New York County (Edward Lehner, J.), entered August 28, 2002, which, upon the grant of the Governor's cross motion for summary judgment, adjudged that the disputed amendments were unconstitutionally enacted by the Legislature and therefore void, should be affirmed, without costs.

BUCKLEY, P.J., ROSENBERGER, ELLERIN and MARLOW, JJ., concur.

Amended judgment, Supreme Court, New York County, entered August 28, 2002, affirmed, without costs.