[774 NYS2d 891]

GEORGE E. PATAKI, as Governor of the State of New York, Respondent, v NEW YORK STATE ASSEMBLY et al., Appellants.

Third Department, April 22, 2004

## APPEARANCES OF COUNSEL

*Weil, Gotshal & Manges L.L.P.*, New York City (*Steven Alan Reiss* of counsel), for New York State Assembly, appellant.

*Hancock & Estabrook L.L.P.*, Syracuse (*Stewart F. Hancock Jr.* of counsel), for New York State Senate, appellant.

*Stillman & Friedman P.C.*, New York City (*Paul Shechtman* of counsel), for respondent.

## OPINION OF THE COURT

LAHTINEN, J.

This appeal involves "[t]he budget process [which] has been the subject of prior legal skirmishes between [plaintiff] and [defendants]" (*Silver v Pataki*, 96 NY2d 532, 536 [2001]; *see New York State Bankers Assn. v Wetzler*, 81 NY2d 98 [1993]; *People v Tremaine*, 281 NY 1 [1939]; *People v Tremaine*, 252 NY 27 [1929]; *Silver v Pataki*, 3 AD3d 101 [2003]). Plaintiff commenced this action in his official capacity as Governor in 2001, alleging that subsequent to his constitutionally-mandated annual submission of the executive budget (*see* NY Const, art VII, §§ 2, 3), defendants, the New York State Assembly and the New York State Senate,[1] unconstitutionally (1) amended and altered nine of the 11 budget bills that he had submitted and (2) introduced and passed 37 appropriation bills in an improper attempt to disregard plaintiff's executive budget and substitute their own. Plaintiff contends that such conduct ran afoul of the restriction on altering appropriation bills contained in NY Con-

---

1. Although the Comptroller was originally a defendant, his motion to dismiss was granted and he is no longer a party.

stitution, article VII, § 4.[2] Plaintiff also alleges that defendants violated the requirements of NY Constitution, article VII, § 5 by considering their own single-purpose bills before taking final action on the budget bills he submitted. Instead of exercising his power of veto (*see* NY Const, art IV, § 7; *cf. Silver v Pataki*, 96 NY2d 532 [2001], *supra*), plaintiff, within 24 hours after signing the last of these bills into law, commenced this action. For this reason, the Assembly asserted that plaintiff lacks standing to bring this action or has waived his right to mount this challenge. Defendants also raised several counterclaims, and thereby sought a declaratory judgment that their actions were constitutional.

There being no facts in dispute, all parties moved for summary judgment. After concluding that plaintiff had standing to sue, Supreme Court determined that defendants' actions violated NY Constitution, article VII, § 4 and that plaintiff was constitutionally authorized to include both items of appropriation and their substantive modifiers within the same proposed legislation (190 Misc 2d 716, 735-737 [2002]). Defendants' appeal, originally filed in the Court of Appeals, was transferred to this Court (98 NY2d 644 [2002]).

■ We affirm. Initially, we are unpersuaded by the Assembly's argument that plaintiff's failure to veto the 46 bills enacted by defendants deprives him of standing or, alternatively, effected a waiver of his right to challenge the constitutionality of defendants' actions. It is well settled that "the budgetary process is not always beyond the realm of judicial consideration and . . . the 'courts will always be available to resolve disputes concerning the *scope of that authority which is granted by the Constitution to the other two branches of the government*'" (*New York State Bankers Assn. v Wetzler, supra* at 102 [emphasis in original], quoting *Saxton v Carey*, 44 NY2d 545, 551 [1978]; *see Silver v Pataki*, 96 NY2d 532, 542 [2001], *supra*). Here, when defendants altered plaintiff's appropriation bills in an allegedly unconstitutional manner, plaintiff was injured. Such a purported usurpation of power is a classic case for which standing is recognized (*see Silver v Pataki*, 96 NY2d 532, 539 [2001], *supra*;

---

2.  NY Constitution, article VII, § 4 provides, in relevant part:
    "The legislature may not alter an appropriation bill submitted by the governor except to strike out or reduce items therein, but it may add thereto items of appropriation provided that such additions are stated separately and distinctly from the original items of the bill and refer each to a single object or purpose."

*see also New York State Bankers Assn. v Wetzler, supra* at 102-103). Plaintiff was not obligated to exercise his veto power and thereby further prolong an already stagnant and fractious budget process in order to create judicially cognizable standing. "The existence of other possible political remedies . . . does not negate the injury in fact" (*Silver v Pataki*, 96 NY2d 532, 541 [2001], *supra*). We thus find plaintiff's claims to be justiciable (*see Winner v Cuomo*, 176 AD2d 60, 63-64 [1992]; *see generally* Weinstein-Korn-Miller, NY Civ Prac ¶ 3001.03; 82 NY Jur 2d, Parties § 12).

■ Turning to the merits, we agree with Supreme Court that defendants' actions in amending nine of the budget bills submitted by plaintiff and introducing and passing 37 single-purpose appropriation bills violated NY Constitution, article VII, § 4. A key component of such conclusion rests upon the historical change in this state during the first half of the twentieth century from a legislative to an executive budget. That change and the reasons therefor were fully set forth by Supreme Court (190 Misc 2d 716, 717-722 [2002], *supra*; *see Silver v Pataki*, 3 AD3d 101 [2003], *supra*). In this appeal, a critical issue is the extent of a governor's constitutional authority to include substantive modifiers in a gubernatorial appropriation bill. Defendants contend that plaintiff's numerous insertions of substantive modifiers within his appropriation bills amount to an unconstitutional attempt to legislate by appropriation and that defendants had the power to strike such measures from plaintiff's proposed budget. We decline defendants' invitation to establish a bright-line rule defining the degree of itemization that may properly be included in a governor's budget submissions. We find sufficient authority to support plaintiff's argument that such substantive modifiers are part of a gubernatorial appropriation bill and subject to the protection of NY Constitution, article VII, § 4 (*see Silver v Pataki*, 3 AD3d 101 [2003], *supra*).

The Court of Appeals, in *Saxton v Carey* (44 NY2d 545 [1978]), instructed that the NY Constitution does not require any particular degree of itemization and only the legislative and executive branches were in a proper position to determine what level of itemization was necessary for the Legislature to effectively review and enact a budget. There, the Court held:

> " 'There is no judicial definition of itemization and no inflexible definition is possible. Itemization is an accordion word. An item is little more than a "thing"

in a list of things. . . . The specificness or general-
ity of itemization depends upon its function and the
context in which it is used. In one context of a
budget or appropriation bill the description of 1,000
police officers within a flexible salary range would
be specific and particular; in another it would leave
the appointing power with almost unlimited control.
In one context an "item" of $5,000,000 for construc-
tion of a particular expressway might seem specific;
in another, void of indication when, how, or where
the expressway or segments of it would be con-
structed. This suggests that there is something of a
battle over words in debating the need for items,
rather than a grappling with a functional concept'
. . . [T]he degree of itemization necessary in a par-
ticular budget is whatever degree of itemization is
necessary for the Legislature to effectively review
that budget. This is a decision which is best left to
the Legislature, for it is not something which can be
accurately delineated by a court" (*id.* at 550, quot-
ing *Hidley v Rockefeller,* 28 NY2d 439, 444 [1971]
[Breitel, J., dissenting]).

This Court should not and will not immerse itself into the very
heart of the "political process" upon which the formulation of
the state budget depends. However prolonged and contentious
the budget process becomes, we are of the opinion that
defendants' proper constitutional action was to refuse to pass
plaintiff's appropriation bills and induce negotiations (*see Sax-
ton v Carey, supra* at 550), not to alter and amend them and
then substitute their own spending plans in the form of 37
single-purpose bills in violation of NY Constitution, article VII,
§ 4. Alternatively, "the remedy is to amend the Constitution to
prescribe new standards for budget-making and appropriations"
(*Hidley v Rockefeller, supra* at 446 [Breitel, J., dissenting]). The
parties' remaining contentions are either academic or unpersua-
sive (*see Silver v Pataki,* 3 AD3d 101 [2003], *supra*; 190 Misc 2d
716 [2002], *supra*).

PETERS, J. (dissenting). We respectfully dissent. In our view,
because plaintiff affirmatively approved the subject legislation,
he lacks standing and, thus, this Court is precluded from reach-
ing the merits of his constitutional claims. Had plaintiff vetoed
the subject legislation, he would have had standing to challenge
it if his veto had been overridden by the Legislature.

We begin our legal analysis with the well-established precept

that one claiming standing must demonstrate an injury in fact, that is, "an actual legal stake in the matter being adjudicated [which] ensures that the party . . . has some concrete interest in prosecuting the action which casts the dispute 'in a form traditionally capable of judicial resolution'" (*Society of Plastics Indus. v County of Suffolk*, 77 NY2d 761, 772 [1991], quoting *Schlesinger v Reservists Comm. to Stop the War*, 418 US 208, 220-221 [1974]; *see New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 211-212 [2004]). Consideration of this essential principle advances the policy of judicial self-restraint, particularly when dealing with constitutional separation of powers. The requirement of injury in fact forecloses an adjudication of grievances that are best resolved by the legislative and executive branches of government, it supports the prohibition on advisory opinions (*see Community Bd. 7 of Borough of Manhattan v Schaffer*, 84 NY2d 148, 155 [1994]) and it cautions that even matters of "vital public concern" (*Society of Plastics Indus. v County of Suffolk, supra* at 769) will not alone confer standing (*see Saratoga County Chamber of Commerce v Pataki*, 100 NY2d 801, 812-815 [2003], *cert denied* — US —, 124 S Ct 570 [2003]; *Society of Plastics Indus. v County of Suffolk, supra* at 773; *Rudder v Pataki*, 246 AD2d 183, 186 [1998], *affd* 93 NY2d 273 [1999]). While standing must not be denied where to do so would erect an "impenetrable barrier" (*Boryszewski v Brydges*, 37 NY2d 361, 364 [1975]) to judicial review (*see Saratoga County Chamber of Commerce v Pataki, supra* at 814), we find no such barrier under the particular facts of this case.

The historical complexion of standing was changed by the United States Supreme Court in its landmark decision of *Raines v Byrd* (521 US 811 [1997]).[1] In addressing the standing question, the Supreme Court emphasized that the standing inquiry must be "especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of . . . [g]overnment was unconstitutional" (*id.* at 819-820). In *Raines*, the plaintiffs' alleged injury was found to constitute only an abstract institutional harm rather than the loss of a private right to which they were personally entitled (*id.* at 820-822). Specifically, the Supreme Court

---

1. In *Raines*, standing was denied to a group of federal legislators who alleged injury from Congress's passage, over their objection, of the Line Item Veto Act. At issue was the plaintiffs' claim that the Act unconstitutionally expanded the President's power and diminished that of Congress by authorizing the President to cancel or repeal provisions that had already been signed into law (*see Raines v Byrd, supra* at 818-820).

found the institutional harm alleged to be "wholly abstract and widely dispersed" (*id.* at 829). The Supreme Court did, however, reaffirm that the injury articulated in *Coleman v Miller* (307 US 433 [1939]), where the legislator-plaintiffs' votes had been "completely nullified" (*Raines v Byrd, supra* at 823),[2] was sufficient to confer standing.

This heightened approach toward standing, signifying the Judiciary's increased reluctance to "meddle in the internal affairs of the [executive and] legislative branch[es]" (*Moore v United States House of Representatives*, 733 F2d 946, 956 [1984], *cert denied* 469 US 1106 [1985]), is widely followed by the federal courts.[3] Moreover, application of the *Raines* precepts is not limited to the legislative branch (*see Gutierrez v Pangelinan*, 276 F3d 539, 545-546 [2002], *cert denied* 537 US 825 [2002] [challenge to a governor's standing]; *Walker v Cheney*, 230 F Supp 2d 51, 63-66 [2002] [challenge to the comptroller general's standing]). Indeed, federal courts have not hesitated to apply *Raines* to challenges concerning the standing of private parties (*see e.g. Schmier v United States Ct. of Appeals for Ninth Circuit*, 279 F3d 817, 820-821 [2002]; *Hoffman v Jeffords*, 175 F Supp 2d 49, 55 [2001], *affd* 2002 WL 1364311, 2002 US App LEXIS 12495 [2002], *cert denied* 537 US 1108 [2003]; *Keen v United States*, 981 F Supp 679, 686-687 [1997]).

Our own Court of Appeals embraced the *Raines* precepts in *Silver v Pataki* (96 NY2d 532 [2001]). In matters involving legislator standing, the Court found that the issues fall within one of three categories, namely, "lost political battles, nullification of votes [or] usurpation of power" (*id.* at 539). Only the latter two categories, if sufficiently demonstrated, will confer standing (*see id.*). We believe that the *Raines/Silver* analysis must be applied here and that the injury alleged fails to fall in either of those two categories.

In short, plaintiff's affirmative approval of the subject legislation prevents him from establishing that defendants' conduct

---

**2.** Unlike *Coleman v Miller* (*supra*), the *Raines* court found that no nullification had occurred since the plaintiffs were unable to demonstrate that their votes against the Line Item Veto Act would have been sufficient to defeat its passage (*see Raines v Byrd, supra* at 826, 829-830).

**3.** (*See Baird v Norton*, 266 F3d 408, 411-413 [2001]; *Campbell v Clinton*, 203 F3d 19, 22-23 [2000], *cert denied* 531 US 815 [2000]; *Chenoweth v Clinton*, 181 F3d 112, 115-116 [1999], *cert denied* 529 US 1012 [2000]; *Planned Parenthood of Mid-Missouri & E. Kansas v Ehlmann*, 137 F3d 573, 577-578 [1998]; *Kucinich v Bush*, 236 F Supp 2d 1, 4-11 [2002]; *see generally* Note, *New Law of Legislative Standing*, 54 Stan L Rev 205 [2001].)

nullified an action taken by him, precluded him from discharging his duties or otherwise deprived him of the ability to "enforce a constitutional obligation integral to his . . . duties" (*id.* at 545 [Graffeo, J., dissenting]). On these facts, his role in the budgetary process was neither "stripped of its validity" (*Raines v Byrd,* 521 US 811, 824 n 7 [1997], *supra; cf. Gutierrez v Pangelinan,* 276 F3d 539, 545-546 [2002], *supra; Romer v Colorado Gen. Assembly,* 810 P2d 215, 218-220 [Colo 1991]) nor " 'virtually held for naught' " (*Raines v Byrd, supra* at 822-823, quoting *Coleman v Miller,* 307 US 433, 438 [1939], *supra*). Rather, plaintiff's approval of the budget has been given "full effect" (*Raines v Byrd, supra* at 824). His signing of these bills into law was not a trivial or irrelevant act, but an affirmation of his role as Governor (*see* NY Const, art IV, § 7; *Matter of Moran v La Guardia,* 270 NY 450, 453 [1936]; *Matter of Doyle v Hofstader,* 257 NY 244, 261 [1931]; *Matter of Koenig v Flynn,* 234 App Div 139, 140-141 [1931], *affd* 258 NY 292 [1932], *affd* 285 US 375 [1932]). As noted in *Matter of Koenig v Flynn* (*supra* at 141): "The Governor has power to act in respect to legislation. In reviewing an act passed by both houses, when presented to him, he has before him the questions of the constitutionality, the expediency of, and the necessity for the act. If he disapproves, he must state his objections thereto."

Moreover, plaintiff was not without effective countermeasures (*see Kucinich v Bush,* 236 F Supp 2d 1, 9 [2002]; *see also Raines v Byrd, supra* at 829; *Saratoga County Chamber of Commerce v Pataki,* 275 AD2d 145, 156 [2000]). He could have, for example, exercised his veto or negotiated his desired result in the legislative arena. Instead, he approved the bills and thereafter commenced this action (*see Chenoweth v Clinton,* 181 F3d 112, 116 [1999]; *Kucinich v Bush, supra* at 9-11; *Silver v Pataki,* 96 NY2d 532, 540 [2001], *supra*). While the majority relies on *Winner v Cuomo* (176 AD2d 60 [1992]) for the proposition that plaintiff did not have to reject the legislation before resorting to the Judiciary, we believe that this reliance is misplaced, particularly since *Winner* predated *Raines.* The plaintiffs in *Winner* were challenging the timeliness, not substance, of the budget legislation; thus, we believe that its holding that it was unnecessary for the Legislature to first reject the Governor's submissions before resorting to the Judiciary is easily distinguished.[4]

---

**4.** Plaintiff's similar reliance on *People v Tremaine* (281 NY 1 [1939]) for the proposition that there was no need to veto the legislation is also misplaced.

By affirmatively approving the legislation, plaintiff deprived himself of standing to challenge the constitutionality of the acts of the Legislature. As a result, we believe that this Court is precluded from addressing the merits of this dispute.

CREW III, J.P., and SPAIN, J., concur with LAHTINEN, J.; PETERS and CARPINELLO, JJ., dissent in a separate opinion by PETERS, J.

Ordered that the order is affirmed, without costs.

---

The constitutional challenge in that case, which did not discuss standing, was brought by the State Comptroller, not the Governor. Moreover, the Governor had not signed or otherwise acted on the legislation in dispute, but had passively allowed it to become law.

Additionally, we do not disagree with the majority's assertion that the courts are not always foreclosed from considering the merits of interbranch constitutional disputes. We note, however, that the cases upon which the majority relies for that proposition were not concerned with standing but, rather, the applicability of the political question doctrine—a concept that is distinctly different from standing (see New York State Bankers Assn. v Wetzler, 81 NY2d 98 [1993]; Saxton v Carey, 44 NY2d 545 [1978]).