KATHARINE A. HAGGERTY, as Administratrix of the
Estate of JOHN J. HAGGERTY, Deceased, Respondent,
*v.* THE CITY OF NEW YORK, Appellant.

(Argued March 15, 1935; decided April 17, 1935.)

*Paul Windels, Corporation Counsel* (*Paxton Blair* and *Barent Ten Eyck* of counsel), for appellant.

*Bernard Hershkopf* and *Harry P. Eppig* for respondent.

CRANE, Ch. J.   The Constitution of the State of New York recognizes two classes of courts — constitutional courts, and inferior local courts of civil or criminal jurisdiction.   The constitutional courts are those which are created or continued by the Constitution and, as to these, the Constitution gives certain power and jurisdiction as well as defining the nature and extent of the office.   The inferior local courts are left to the creation, control and regulation of and by the Legislature.

Beginning with the judiciary article, in effect January 1, 1926, known as article VI of the Constitution, we find provision made for the continuance of the Supreme Court, with general jurisdiction in law and in equity, subject to such appellate jurisdiction of the Court of Appeals as may be prescribed by law.

The term of office of a Supreme Court justice is fourteen years.

The Court of Appeals is continued, and the term of the judge fixed at fourteen years.   Its jurisdiction is specifically detailed.

The County Court is next provided for, as appears in section 11: " The existing county courts are continued, and the judges thereof now in office shall hold their offices until the expiration of their respective terms."   Some are to be elected for six years, others for fourteen years.

The Constitution in section 12 even provides for the special county judge.

Then comes the Surrogates' Courts, which are specifically provided for in section 13 of this article: " The existing surrogates' courts are continued, and the surrogates now in office shall hold their offices until the expiration of their respective present terms." Some are to be chosen for six years and others for fourteen years.

We find also this article of the Constitution covers the Courts of General Sessions and also the City Court as they are constituted in the city of New York. Section 14 reads: " The court of general sessions in and for the city and county of New York is continued with its present jurisdiction, under the name of the court of general sessions of the county of New York." The term shall be fourteen years.

Section 15: " The city court of the city of New York is continued, and, from and after the first day of January in the second year following the adoption of this article, it shall have the same jurisdiction and power throughout the city of New York, under the name of the city court of the city of New York, as it now possesses within the county of New York and the county of Bronx."

These are the judicial offices created or continued by the Constitution, and beyond the power of the Legislature to control or regulate, except as that power is given to it expressly or impliedly by the Constitution.

As to justices of the peace, the Constitution (§ 17) provides that: " The electors of the several towns shall, at their annual town meetings, or at such other time and in such manner as the legislature may direct, elect justices of the peace, whose term of office shall be four years." Every other judicial officer in this State is a creature of the Legislature, whose office may be abolished at any time, and whose duties, as well as his office, are under the regulation and control of the Legislature. Thus, by section 17 of this judiciary article, we have this provision,

following the enumeration of the above judicial offices and courts: " All other judicial officers in cities, whose election or appointment is not otherwise provided for in this article, including all judicial officers holding courts of special sessions, magistrates' courts, or other inferior local courts of criminal jurisdiction in the city of New York, shall be chosen by the electors of such cities, or appointed by some local authorities thereof as may be prescribed by law."

And again, in section 18 we have this: " Inferior local courts of civil and criminal jurisdiction may be established by the legislature, but no such inferior local court which has been created since the first day of January, one thousand eight hundred and ninety-five, or is hereafter created shall be a court of record. All inferior local courts now or hereafter established may be regulated or discontinued by the legislature."

The Municipal Court of the City of New York is thus an inferior local court of civil jurisdiction, created by the Legislature. Nowhere do we find in the Constitution any provision for its creation, continuance or even existence. The Legislature having created it, may abolish it at any time or transfer its jurisdiction to any other tribunal. To regulate it, both as to tenure of office as well as to any other circumstance and condition, is a power specifically given by the Constitution, and this power includes the right at any time to change or modify the compensation of its judges. Surely if the Legislature has power to abolish the court and is given specifically plenary power to regulate it, as the whole includes the part, so this power must permit of the decrease or increase in salary.

That the Legislature may do this thing, unless controlled or restricted by the Constitution, is conceded. Therefore, it is sought to make the Municipal Court of the City of New York a constitutional court. This cannot be done without thwarting the clear intent and purpose as well

as the express phraseology of this fundamental charter of State government. That section 9 has in it these words: " All other judicial officers, except justices of the peace, justices of the municipal court of the city of New York, and judges or justices of inferior courts not of record, may be removed by the Senate, * * * " does not make the Municipal Court a constitutional court by this mere mention of it any more than it does all other inferior courts within the possibilities of propagation.

Having provided for vacancies in the offices of judges of the Court of Appeals and the Supreme Court, the Constitution, by section 16, provided for other vacancies created in the constitutional judicial office by saying: " Vacancies occurring in the office of county judge, special county judge, surrogate, special surrogate, judge of the Court of General Sessions of the city of New York, or justice of the City Court of the county of New York, shall be filled by appointment by the governor by and with the advice and consent of the Senate if the Senate be in session," etc. Clearly, the courts which this article VI created and continued by constitutional mandate were those which I have specified, and did not include the inferior local courts of civil and criminal jurisdiction created by the Legislature, of which the Municipal Court of the City of New York is one.

Therefore, when section 19 of article VI provided for the compensation of judges it had reference to those judges whose office had been created or continued by the article itself. Unnecessary was it to give such power in the Constitution to the Legislature as it had such power anyway. It could create such local courts as it desired unless restrained by the Constitution, and pay the judges any given compensation. The Constitution, moreover, in section 18 had recognized the power of the Legislature to create local courts, regulate or discontinue them. The compensation section, reading: " All judges, justices and surrogates shall receive for their services such compensa-

tion as is now or may hereafter be established by law, provided only that such compensation shall not be diminished during their respective terms of office," has reference to those judicial officers created and continued by the Constitution, for it is only such that this article of the Constitution is dealing with generally. All other judicial officers, both as to creation, continuance, regulation and compensation are left entirely to the control and power of the Legislature.

Does it not seem somewhat strained to say that the Legislature may abolish the Municipal Court, may reduce the term of office to a week or a day, may create another court in its place and end the term of every judge (*Schieffelin* v. *Goldsmith*, 253 N. Y. 243), and yet cannot reduce his compensation? I can find nothing in the Constitution that limits the Legislature in this respect. The same reasoning adopted for the Special Sessions judge applies to the judge of the Municipal Court and, as to the former, this court has held that the Legislature could reduce his salary during his term. (*Matter of Gresser* v. *O'Brien*, 263 N. Y. 622, affg. 146 Misc. Rep. 909.)

If the Municipal Court be a constitutional court beyond the power and control of the Legislature, then in no way can its jurisdiction be limited or controlled so as to take from it the functions which it now has. (See *People ex rel. Wogan* v. *Rafferty*, 208 N. Y. 451.)

The line of cleavage between the constitutional and the legislative courts is clearly drawn by the Constitution of 1925, and it should not become blurred or obliterated by judicial interpretation. *Matter of Adler* v. *Voorhis* (254 N. Y. 375) is not in point. The statement that the Constitution has now given place to inferior local courts refers to those courts provided for in the Constitution, as above stated — the General Sessions and the City Court, and not to the Municipal Court of the City of New York. This case dealt with the time for holding elections, which was very materially changed by the new judiciary article.

Reference should be made to the rulings of the United States Supreme Court regarding this matter of inferior local courts under the Federal Constitution. In *Williams* v. *United States* (289 U. S. 553) it was held that the judicial power of the Court of Claims is not vested in virtue of article III of the Constitution, so as to bring its judges within the protection of that article as to tenure of office and compensation.

For these reasons the judgment should be reversed and the complaint dismissed, with costs in all courts.

CROUCH, J. (dissenting). Plaintiff's intestate was a justice of the Municipal Court of the City of New York. He took office for a term of ten years on January 1, 1930. He died in December, 1933. When he was elected and when he took office the salary of the justices of that court was fixed at $12,000 per year. In 1932 the Board of Estimate and Apportionment reduced the salary for 1933 to $10,840 a year, pursuant to the purported power conferred by chapter 637 of the Laws of 1932. At the time of decedent's death the amount of salary withheld from him over his due protest noted upon the payrolls was $996.60. This action is brought to recover that sum. The authority of the statute is pleaded as a defense. The reply is that the statute contravenes section 19 of article VI of the State Constitution, the first sentence of which reads as follows: "All judges, justices and surrogates shall receive for their services such compensation as is now or may hereafter be established by law, provided only that such compensation shall not be diminished during their respective terms of office." The contention of the city is that (1) the Municipal Court is not a constitutional court; and (2) protection against salary reductions extends to judges and justices of constitutional courts only.

For the purpose of the immediate discussion I accept the city's definition of a constitutional court as one

established or continued by the Constitution, as contradistinguished from a court whose establishment or continuance is left to legislative discretion. It follows, and for the same purpose I assume, that the Municipal Court is not a constitutional court. I am thus brought to the essential question: Does the constitutional bar against the diminution of judicial salaries apply literally to " all judges, justices and surrogates," or does it apply only to all judges, justices and surrogates of constitutional courts?

The genesis and history of the constitutional provision, as well as the classic statement of the reasons underlying it, are clearly and for the most part accurately stated in the opinion of the trial court in *Matter of Gresser* v. *O'Brien* (146 Misc. Rep. 909, at pp. 912–918). They need not be repeated here. It is sufficient to say that from 1846 to January 1, 1926, when the present judiciary article took effect, the constitutional bar against diminution of salary applied only to judges, by whatever term known, of constitutional courts. The Constitution of 1894, as originally adopted and as it continued to read down to 1909, provided in section 12 of article VI as follows: " The judges and justices hereinbefore mentioned shall receive for their services a compensation established by law, which shall not be increased or diminished during their official terms." (With an exception immaterial here.) " The judges and justices hereinbefore mentioned " were judges and justices mentioned in the preceding eleven sections of article VI. They were the judges of the Court of Appeals, the justices of the Appellate Division and the justices of the Supreme Court. A similar inhibition applicable to county judges or surrogates was contained in section 15 of article VI. In 1909 an ill-starred amendment of section 12 was adopted which eliminated the increase or diminution clause, fixed in terms the salary of Supreme Court justices, and left the judges of the Court of Appeals dependent upon the doubtfully applicable provision of section 9 of article X relating to the salaries of State officers.

With that background, the Judiciary Constitutional Convention of 1921 entered upon its work, which it understood to be in the nature of amendment rather than of entire revision. "It was the duty of the convention," says its report to the Legislature, "to suggest no constitutional changes which were not deemed necessary because of some clearly disclosed and definite evil or abuse, or because likely to clarify the meaning and intent of existing provisions, or because tending to promote efficiency and expedition in the administration of justice, certainty and security to litigants, and satisfaction and confidence on the part of the public." (Legislative Document [1922], No. 37, p. 7.) And in dealing with matters of style and arrangement, the same report says: "The convention concluded that it should suggest no more amendments or readjustments than seemed reasonably necessary and practically desirable. A change of language might well be construed as some evidence of a change of intent, and thus create litigation" (p. 9). The report then takes up section by section the draft of the Constitution which the Convention had framed. With reference to section 19 the report says: "A number of general provisions are consolidated in the new section 19, which were heretofore in other sections, and which method rendered it difficult to ascertain readily the various constitutional provisions applicable to *all judges* (p. 29).

Having in mind what is thus known of the purposes and attitude of the framers, and using accepted canons of interpretation, I can see no rational escape from the conclusion that the first sentence of section 19 of article VI makes the bar against diminution of salary applicable to every judge, justice or surrogate without regard to whether the court in which he sits is a constitutional court or not. The reasons may be briefly stated as follows:

(1) The language of the provision is clear and unambiguous. Taken by itself without reference to historical antecedents or to setting, its meaning is as clear as words

can make it. Its application is all-inclusive. In dealing with a constitutional provision framed in language no clearer than that here in question, this court said: "In the construction of constitutional provisions, the language used, if plain and precise, should be given its full effect and we are not concerned with the wisdom of their insertion. As adopted by the People the intent is to be ascertained, not from speculating upon the subject; but from the words in which the will of the People has been expressed. To hold otherwise would be dangerous to our political institutions. * * * The latitude allowed in the construction of legislative acts is out of place, and would be unwise, when interpreting the fundamental law. * * * The Constitution, which underlies and sustains the social structure of the state, must be beyond being shaken, or affected, by unnecessary construction, or by the refinements of legal reasoning." (*People* v. *Rathbone*, 145 N. Y. 434, 438.)

Citations to the same effect could be multiplied. The rule of construction is so well settled and the reasons for it are so sound and clear that it is unnecessary to do so. When the mandate comes from the people and the people's representatives, limitations should not be read into the text of the Constitution by dubious construction. (*Browne* v. *City of New York*, 241 N. Y. 96, 112.) Unless there are compelling reasons to the contrary, leaving no room for doubt, it is our duty to give effect to the language of the provision as it would have been understood in its ordinary sense both by the members of the Legislature, who by concurrent resolution proposed the present judiciary article to the people, and by the people themselves. We may not blind ourselves to the fact that the only judges and justices known to the great majority of the people are those who sit in the lesser courts of local jurisdiction, unnamed in the Constitution.

(2) If one considers the provision in question in connection with the other provisions of section 19, the same

conclusion is reached. We know from the report of the Convention, above referred to, that section 19 was primarily framed to include various constitutional provisions theretofore found in other scattered sections, which were applicable to all judges. So we find the second sentence dealing with the election or appointment of " all judicial officers;" the fourth sentence with a general prohibition addressed to all judges; and the fifth sentence with another prohibition likewise addressed. *Noscitur a sociis.* The other sentences of the section embracing provisions of limited application specifically name the judges to whom the provisions are or are not applicable. Had it been intended to limit the application of the first sentence, it is difficult to understand why the same method should not have been used. Furthermore, we may notice that the historic phraseology of this provision ( " The judges and justices hereinbefore mentioned ") was abandoned and for the first time there was used the all-embracing phrase, " All judges, justices and surrogates." We have it upon the word of the Convention itself that " a change of language might well be construed as some evidence of a change of intent."

(3) Again, if one considers the provision in its relation to the remaining provisions of article VI, the intent of the framers is made even more clear. It is idle to say that they had no thought of the existence of other than constitutional courts. One of the problems before the Convention was to simplify and consolidate, as far as possible, the entire system of courts. In doing so, it gave a place in the Constitution itself for the first time to certain inferior local courts in cities or parts of cities. (*Matter of Adler* v. *Voorhis,* 254 N. Y. 375, 378.) Moreover, in section 9 of article VI, providing for the removal of judicial officers, exception was made of justices of the peace, justices of the Municipal Court of the City of New York, and judges and justices of inferior courts not of record. Thus where it was desired to make an exception

in the case of inferior courts, the article does so plainly and directly.

In the sections of article VI preceding section 19 provision had been made for a complete system of courts consisting of those specifically established or continued, being courts of major importance, and those inferior local courts of civil and criminal jurisdiction, including children's courts and courts of domestic relations which the Legislature was authorized to establish. Having thus provided for a complete system, section 19 followed immediately with its command that *all* judges, justices and surrogates should receive a compensation which should not be diminished during their respective terms in office.

It seems clear that the same considerations which theretofore had led to the protection of some judicial salaries were deemed applicable to all. Freedom from political or other dominance by threat against his economic security is perhaps even more necessary to the independence of the lesser judge than to that of one in higher place.

(4) *Matter of Gresser* v. *O'Brien* (146 Misc. 909; affd. without opinion, 263 N. Y. 622) was a mandamus proceeding, and not, as here, an action at law. (*Matter of Black* v. *O'Brien*, 264 N. Y. 272.)

The judgment should be affirmed.

LEHMAN, HUBBS and FINCH, JJ., concur with CRANE, Ch. J.; CROUCH, J., dissents in opinion in which O'BRIEN and LOUGHRAN, JJ., concur.

Judgment reversed, etc.