■ In the Matter of MILTON M. BERGERMAN, Individually and as Chairman of Citizens Union of the City of New York, Respondent, against LAWRENCE E. GEROSA, as Comptroller of the City of New York, et al., Appellants, and JAMES J. LYONS, Intervenor-Appellant.

FRANK, J. (dissenting). One of the prime questions posed in this article 78 proceeding is the constitutionality of section 842 of the Laws of 1955. Special Term held in effect that the statute was valid under all the provisions of the Constitution save section 10 of article IX (formerly art. III, § 28). It must be assumed that the majority in affirming holds similarly. The section of the Constitution referred to provides that, "The legislature shall not, nor shall the common council of any city * * * grant any extra compensation to any public officer". It has been interpreted to mean compensation "over and above that fixed * * * by law when the services were rendered." (*Matter of Mahon* v. *Board of Educ.*, 171 N. Y. 263, 266-267.)

Actually, the statute under consideration does not provide for "extra compensation" and on its face is not violative of any constitutional prohibition. Special Term, in my view, exceeded the designed purpose of an article 78 proceeding and treated the application as one for a declaratory judgment.

In 1932, the Legislature (L. 1932, ch. 636), authorized the opening of the budget of the City of New York adopted for 1933, and authorized the board of aldermen (L. 1932, ch. 637) to fix the salaries of officers and employees paid out of the city treasury. It should be noted that these sections were permissive and did not *in haec verba* direct the action taken. Following the enactment of

this legislation, the budget was opened and the salary of borough presidents was fixed at $16,695 for 1933. In the budget for 1934, the salary was fixed at $15,000. During all this time, the Greater New York Charter (§ 382, in effect until January 1, 1938) provided for the office of borough president, fixed the term of office, the residential requirements, the method of election, the filling of vacancies, and specified a salary of $20,000 per year for the president of each of the five boroughs.

The court below held that chapter 637 of the Laws of 1932 superseded the charter provision and restrained the comptroller and treasurer of the City of New York from paying any claims filed pursuant to section 842 of the Laws of 1955. The majority of this court has affirmed the order.

I must dissent. I cannot agree that chapter 637 of the Laws of 1932 superseded the specific provisions of the charter. The Greater New York Charter (until it was replaced by the Charter of the City of New York on January 1, 1938) provided for the method to be used for its amendment. The City Home Rule Law (L. 1924, ch. 363, as amd.) empowered the local legislative body of the city (board of aldermen and board of estimate) to amend the charter provisions by local law. It provided (§ 13) that no local law be enacted unless passed by a majority vote of each branch of the city legislative body and approved by the mayor. There is no suggestion in this proceeding that a local law was enacted amending the charter provision fixing the salary for borough presidents.

I do not believe that the city officials in 1933 could by-pass the charter provisions by reopening the budget and changing the salary lines therein provided. It is urged that in several cases the courts have sustained the action taken by the board of aldermen pursuant to chapter 637 of the Laws of 1932 (*Albert* v. *City of New York*, 250 App. Div. 555, affd. 275 N. Y. 484; *Haggerty* v. *City of New York*, 267 N. Y. 252; *Moran* v. *City of New York*, 246 App. Div. 715, affd. 270 N. Y. 650). In my view, the decided cases are clearly distinguishable and do not involve the problem posed here. The *Albert* case dealt with the salary of a County Register, fixed by a State statute (L. 1928, ch. 663), which clearly could be changed by a later and superseding State law. The *Haggerty* case was concerned with the salary of a Municipal Court Justice, fixed pursuant to the Municipal Court Act (§ 3). Here, too, since the office was not in a constitutional court, the Legislature was empowered to authorize a change in salary just as it could abolish the position.

The *Moran* case has particular cogency here. The Laws of 1932 (ch. 637) provided that, "a temporary emergency exists requiring the enactment of the following provisions, and their application until the legislature shall find their further operation unnecessary." In 1935, the Legislature passed a concurrent resolution providing that, "The temporary emergency * * * no longer exists". After a request for restoration of his salary, the plaintiff instituted the action. The Court of Appeals held, in answering the certified question, that the Legislature did not have the power to declare the 1932 legislation inoperative by a resolution instead of by a bill requiring the signature of the Governor. The Court of Appeals in a companion action (*Matter of Moran* v. *LaGuardia*, 270 N. Y. 450, 452) amplified its ruling and stated, "A concurrent resolution for the Legislature is not effective to modify or repeal a statutory enactment. * * * To repeal or modify a statute requires a legislative act of equal dignity and import. Nothing less than another statute will suffice." We should adopt the rationale of the *Moran* case. The Laws of 1932 (chs. 636, 637) were not required in order to reduce prospectively the salaries of the mayor, the comptroller, the president and the members of the board of aldermen or the borough presidents. The enactment of a local law, amending

the charter with respect to the salaries specifically fixed therein, would have sufficed. By the same token, the failure to take such action and the attempt to disregard the charter provision by exercising the power given by the Legislature to reopen the budget and adjust the salaries therein, was, in my view, as ineffectual as the adoption of a concurrent resolution by the Legislature to vitiate a duly enacted statute. I am, therefore, constrained to hold that chapter 842 of the Laws of 1955 does not violate the State Constitution, and particularly section 10 of article IX, thereof. The distinction between salary modification by budgetary action with respect to employees and officials whose salaries were not specified in the charter and those that were, has apparently been overlooked or disregarded.

The court below in the order appealed from has forbidden and restrained the comptroller and the treasurer of the City of New York from paying any salaries for past services as authorized by the Laws of 1955 (ch. 842). In addition, it specifically enjoins the payment according to the scale set by the Greater New York Charter commencing with the effective date of chapter 637 of the Laws of 1932, and continuing down to and including 1937. The majority has affirmed the order *in toto*. This, in spite of the fact that in addition to the claim of the borough president, a claim has also been filed by the former County Clerk of Queens County, who as an officer of the Supreme Court of this State, could not have had his salary diminished during his term of office (*Hanley* v. *City of New York,* 275 N. Y. 482; *Albert* v. *City of New York,* 250 App. Div. 555, affd. 275 N. Y. 484, *supra*; *Eberhardt* v. *City of New York,* 163 Misc. 370). It should be noted that the Supreme Court was specifically exempted in the 1932 statute. Moreover, the salary of the County Clerk was reduced after he took office, and apparently the only reason the claimant was not paid, as was Eberhardt, was his failure to accept payment under protest. The 1955 statute was enacted to cure such failure to protest, as have many similar legislative enactments. (See L. 1950, ch. 776 curing defect discussed in *Matter of Benvenga* v. *La Guardia,* 294 N. Y. 526; L. 1954, chs. 611, 612, 613, 614, 621, 622, 623, 624, 724.)

This court cannot determine from the record how many claims have been or will be filed within the period prescribed by the statute. The proceeding was commenced and the order of restraint was signed before the expiration of the statutory time limitation. No proof was taken with respect to the claims already filed and no inquiry made as to whether the officials duly designated to process them have done so. It seems to me, since the statute on its face is constitutional, that proof should have been taken before a restraining order was entered.

Appellants urge that chapter 178 of the Laws of 1934 replaced the 1932 legislation and specifically exempted constitutional officers from the power given the board of estimate to fix salaries by resolution. While I agree that a borough president was a constitutional officer by virtue of his membership on the board of aldermen (Greater New York Charter, § 382; N. Y. Const., art. X, § 5; *Needleman* v. *Voorhis,* 254 N. Y. 339; *People ex rel. Deitz* v. *Hogan,* 214 N. Y. 216, 222), I deem it unnecessary to consider that question because of my view that the charter provision fixing the salary remained unimpaired by the 1932 legislation.

For the foregoing reasons, the order entered below should be reversed and the motion denied.

Peck, P. J., Botein and Valente, JJ., concur in decision; Frank, J., dissents and votes to reverse and deny the motion, in opinion.

Order, so far as appealed from, affirmed, with $20 costs and disbursements to the respondent. [208 Misc. 477.]