This memorandum is uncorrected and subject to revision before publication in the New York Reports.
--------------------------------------------------------------

No. 86
The People &c.,
            Respondent,
         v.
Martesha Davidson,
            Appellant.

            Robert R. LaLonde, for appellant.
            Robin A. Forshaw, for respondent.
            Barbara D. Underwood, for amicus curiae Attorney
General of the State of New York.

MEMORANDUM:

            The order of County Court should be affirmed.

            In 2012, the legislature enacted article 20 of the

Executive Law as part of the "Protection of People with Special

Needs Act" to protect those "who are vulnerable because of their

reliance on professional caregivers to help them overcome

- 1 -

physical, cognitive and other challenges" (L 2012, ch 501).

Specifically, the enactment calls for the creation of a "justice

center" -- the primary purpose of which is to protect "vulnerable

persons" as defined in Executive Law § 550 (5).  The center was

granted "concurrent authority with district attorneys to

prosecute abuse and neglect crimes committed against [vulnerable]

persons," thereby bolstering the state's ability to respond to

such crimes "without creating additional burdens on law

enforcement" (id.).

In carrying out that task, Executive Law § 552 (2) (a)

mandates that the justice center "employ a special prosecutor"

who has

> "the duty and power: (i) to investigate and
> prosecute offenses involving abuse or neglect
> ...; and (ii) to cooperate with and assist
> district attorneys and other local law
> enforcement officials in their efforts
> against such abuse or neglect of vulnerable
> persons ..."

Pursuant to that law, the special prosecutor

> "may, after consultation with the district
> attorney ... attend in person any term of the
> county court or supreme court having
> appropriate jurisdiction, including an
> extraordinary special or trial term of the
> supreme court ... or appear before the grand
> jury thereof, for the purpose of managing and
> conducting in such court or before such jury
> a criminal action or proceeding concerned
> with an offense where any conduct
> constituting or requisite to the completion
> of or in any other manner related to such
> offense involved the abuse or neglect of a
> vulnerable person ... In such case, such
> special prosecutor ... may exercise all the
> powers and perform all the duties in respect

of such actions or proceedings which the district attorney would otherwise be authorized or required to exercise or perform" (Executive Law § 552 [2] [c]).

Defendant, an employee of the Finger Lakes Residential Center, was charged in Town Court with endangering the welfare of a child (Penal Law § 260.10 [1]) and harassment in the second degree (Penal Law § 240.26), arising from an incident that allegedly occurred at the center between defendant and a 14-year-old resident.  Defendant moved to dismiss the misdemeanor information pursuant to CPL 170.30 (1) (f) on the grounds that the special prosecutor did not have the authority to prosecute offenses in local criminal courts and that such authority was limited to prosecuting abuse and neglect cases in County and Supreme Court as evidenced by Executive Law § 552 (2) (c).  Town Court agreed, holding that the language of section 552 (2) (c) served as a jurisdictional impediment to the special prosecutor's ability to appear and prosecute abuse and neglect cases in local criminal courts.

On appeal, County Court reversed and remanded to Town Court for further proceedings, holding that rather than limiting the special prosecutor's power, section 552 (2) (c) constituted "an additional grant of authority permitting participation in and prosecution of felonies before the grand jury and the appropriate superior court."  County Court did not address defendant's constitutional argument since it had not been raised before Town Court and therefore not preserved for

appellate review; nor did it reach defendant's further contention that the special prosecutor's failure to consult with the district attorney's office before appearing in local criminal court was a fatal flaw mandating dismissal of the charges. In light of this, this Court's review is limited solely to the question whether Executive Law § 552 (2) (c) prohibits the special prosecutor from prosecuting abuse and neglect cases in local criminal courts.

County Court's order should be affirmed. There is no indication from the statute that the special prosecutor's powers are limited by section 552 (2) (c). That section merely sets forth the requirement that the special prosecutor consult with the district attorney of the pertinent county should the special prosecutor wish to appear in County Court or Supreme Court, or before the grand jury, for the purposes of managing or conducting before such court or grand jury a criminal action or proceeding involving the abuse or neglect of a vulnerable person. There is no indication that the statute governs proceedings in local courts at all.[1]

---

[1] The dissent addresses issues that are not before us and we do not consider them given the procedural posture of the case.

People v Martesha Davidson

No. 86

Rivera, J.(dissenting):

In this case the Court must determine the powers of the Special Prosecutor for the Protection of People with Special Needs, including whether they have full and complete prosecutorial authority independent from the District Attorney. Defendant claims that Special Prosecutors have no authority under Executive Law section 552 (2) (c) to initiate or pursue a criminal proceeding against her in Town Court because that provision only allows the Special Prosecutor to appear before County and Supreme Court and a grand jury. Defendant further argues that an unelected Special Prosecutor may not be appointed to appear in a criminal matter without input from the District Attorney, who in her case declined to prosecute, thus foreclosing any action by the Special Prosecutor here. As a matter of law, I agree with the majority that defendant reads into section 552 (2) (c) a proscription on the Special Prosecutor's authority and Town Court's jurisdiction which is unsupported by the statutory text. However, I disagree that an affirmance is appropriate in this case.

The Legislature may not transfer or diminish the core

- 1 -

responsibilities and prosecutorial powers of a constitutionally elected officer, such as a District Attorney, through appointment of an unelected official (see People ex rel. Wogan v Rafferty, 208 NY 451, 456 [1913]; see also NY Const. art. 5, § 1 [the "attorney-general shall be chosen at the . . . general election"]; NY Const. art. 13, § 13 ["In each county a district attorney shall be chosen by the electors once in every three or four years as the legislature shall direct"]).  The District Attorney has the ultimate responsibility for prosecuting crimes and offenses (People v Soddano, 86 NY2d 727, 728 [1995]), and the sole discretion to conduct all phases of criminal prosecutions (Matter of Soares v Carter, 25 NY3d 1011, 1013 [2015]).

Thus, where the Legislature creates the office of an appointed special prosecutor for criminal matters involving the safety of a statutorily classified population dependent on state services, and also prohibits interference with the investigatory and prosecutorial duties of the District Attorney, such special prosecutor may only appear in accordance with the authorizing statute, upon consent of the local District Attorney.  The record before us is unclear on whether such consent was obtained, and therefore the matter should be remitted for further proceedings to resolve this issue.

I.

The Legislature enacted the Protection of People with

Special Needs Act ("Act") "to strengthen and standardize[] the safety net for vulnerable persons, adults and children alike, who are receiving care from New York's human service agencies and programs . . . [due to] disabilities or other life circumstances" (Legislative Findings, Protection of People With Special Needs Act, Ch. 501, L. 2012 Part A).  The Act "creates a set of uniform safeguards to be implemented by a justice center whose primary focus will be on the protection of vulnerable persons" (id.).  The Legislature intended that "the justice center will have concurrent authority with district attorneys to prosecute abuse and neglect crimes committed against such persons" in order "[t]o bolster the ability of the state to respond more effectively to abuse and neglect of vulnerable persons, without creating additional burdens on local law enforcement" (id.).

Pursuant to the statutory design, the Justice Center is housed within the Executive branch, and headed by an executive director appointed by the Governor, by and with the advice and consent of the Senate (Executive Law § 551 [1]).  In furtherance of the legislative purpose to provide additional resources to stem abuse and neglect crimes, the Act mandates the formation of a prosecution unit within the Justice Center, and that the Justice Center employ "a special prosecutor and inspector general" (Executive Law § 552 [2] [a]).  These prosecutorial staff members are unelected officials appointed by the Governor, without Senate approval (id.).

In section 552 (2) (a) the Act provides that the Special Prosecutor has "the duty and power: (i) to investigate and prosecute offenses involving abuse or neglect . . . committed against vulnerable persons by custodians . . . and (ii) to cooperate with and assist district attorneys and other local law enforcement officials in their efforts against such abuse or neglect of vulnerable persons" (Executive Law § 552 [2] [a]). This grant of power is subordinate to the existing authority of District Attorneys, and is explicitly limited by the legislative mandate that "nothing herein shall interfere with the ability of district attorneys at any time to receive complaints, [and] investigate and prosecute any suspected abuse or neglect" (id.).

In the same vein, in accordance with section 552 (2) (b) the Special Prosecutor must give prior notice to the local District Attorney before applying for a search warrant, except in exigent circumstances, in which case notice must be provided "as soon thereafter as is practicable" (Executive Law § 552 [2] [b]). Most significantly, under section 552 (2) (c) the Special Prosecutor "[may] attend in person any term of the county court or supreme court having appropriate jurisdiction . . . or appear before the grand jury thereof, for the purpose of [conducting] a criminal action or proceeding" for any action related to an offense that involved the abuse or neglect of a vulnerable person, only "after consultation with the district attorney as to the time and place of such attendance or appearance" (Executive

Law § 552 [2] [c]).  Thus, contrary to defendant's argument, under the Act there is no wholesale prohibition on the Special Prosecutor's authority to pursue criminal matters in Town Court. Further, and apart from the lack of textual support for defendant's argument, her construction of § 552 (2) (c) would undermine the legislative criminal justice goal of providing greater human and programmatic resources as a means to enhance prosecutions across the state, without the added burden on local law enforcement (see Legislative Findings, Ch. 501, L. 2012 Part A).  However, while I therefore agree with the majority's conclusion that a Special Prosecutor may appear and pursue criminal matters in Town Court this does not end our inquiry.[1]

_____

[1] The majority reaches its conclusion notwithstanding that, according to my colleagues, "[t]here is no indication that the statute governs proceedings in local courts at all" (majority op., at 4).  This suggested possible alterative ground for the Special Prosecutor's authority ignores the text and intent of the Act, which is to increase resources to enhance prosecution of abuse and neglect crimes by empowering the Special Prosecutor to investigate and prosecute these matters (see Executive Law § 552 [2] [a] ["such special prosecutor shall have the duty and power . . . to investigate and prosecute offenses involving abuse or neglect . . . committed against vulnerable persons . . . and [] to cooperate with and assist district attorneys and other local law enforcement officials"; see also Legislative Findings, Protection of People With Special Needs Act, Ch. 501, L. 2012 Part A [The Act "creates a set of uniform safeguards, to be implemented by a justice center whose primary focus will be on the protection of vulnerable persons"]).  Moreover, the comprehensive scope of Justice Center's authority on matters involving the population affected by the Act belies the narrow interpretation suggested by the majority (see Legislative Findings, Ch. 501, L. 2012 Part A [The Justice Center "[t]o bolster the ability of the state to respond more effectively to

Defendant's arguments about the role of Special Prosecutors under
the Act necessitates this Court determine the scope of their
power.

II.

A.

Resolution of defendant's appeal requires this Court to
further consider the knotty question of whether the Legislature
may create an unelected, Governor-appointed Special Prosecutor,
independent of the local District Attorney.  Defendant originally
raised this issue when she claimed, during her initial argument
to Town Court, that "[u]nder the New York State Constitution the
only entity with the authority to prosecute criminal matters is
the county district attorney."  Defendant continues to assert
that where neither the District Attorney nor Attorney General is
the appointed Special Prosecutor, appointment of any other person

---

abuse and neglect of vulnerable persons, without creating
additional burdens on local law enforcement, the justice center
will have concurrent authority with district attorneys"]).
     Of course, if the majority were correct, the Act would still
be interpreted to require consent from the District Attorney.
This Court has expressly held that while a District Attorney can
delegate the prosecution of petty crimes or offenses the District
Attorney "must retain the ultimate, nondelegable responsibility
for prosecuting" such crimes (see Soddano, 86 NY2d at 728).
Thus, if the Act did not apply to Town Court then the District
Attorney retained all prosecutorial authority with regard to that
court.  Consequently, the Justice Center Special Prosecutor could
only prosecute an individual in Town Court with the consent of
the District Attorney. Consent which is not evidenced from the
face of the record.

is unlawful absent input from the local District Attorney, who
serves as the elected prosecutor for the County, in accordance
with County Law 700 (1) and the State Constitution, Article XIII,
section 13.  She distinguishes her case from one involving
appointment of the Attorney General because, unlike the Special
Prosecutor created by the Act, the Attorney General is an elected
official who historically had a measure of prosecutorial
authority independent of local prosecutors, and thus such
appointment avoided conflict with local home rule.  To be clear,
defendant does not argue that the Act is unconstitutional, only
that our legal system abhors unchecked prosecutorial authority,
and in order to protect the population from the caprice and
zealotry of an unelected Special Prosecutor there must be
prescriptions on unbridled power.[2]

The Attorney General, appearing as amicus curiae, goes
further, and argues, as a constitutional matter, that the Special
Prosecutor may proceed with defendant's prosecution only with the
local District Attorney's consent.[3]  According to the Attorney

----

[2] Regardless of whether defendant now chooses to focus her
argument on the statutory text of the Act she specially asserted
in her appeal to County Court that the Act is unconstitutional.
Moreover, for the reasons I discuss we are squarely presented
with questions related to the authority of the Special Prosecutor
as it impacts on the constitutional nondelegable powers of
District Attorneys.

[3] In the courts below, defendant failed to notify the
Attorney General that she was asserting a constitutional
challenge to the Act, as required by Executive Law § 71 (1), and

General, the Legislature may not transfer the essential prosecutorial function of an elected constitutional officer to persons selected by appointment. Further, given that the District Attorney has the ultimate responsibility for whether and who to prosecute, those powers cannot be diminished by assignment to the Special Prosecutor. Nevertheless, the Attorney General argues that the Act may be construed to preserve the District Attorney's constitutional power if we interpret the Act's language and purpose to require consent.

In response, the Justice Center claims it has complete independence from the District Attorney, and may prosecute at will, based on the Legislature's intent that Special Prosecutors have concurrent authority with the District Attorney, and the Act's specific grant of power to investigate and prosecute. The Justice Center notes that the Legislature's choice to amend CPL 1.20 (32) to include the Special Prosecutor within the definition of District Attorney is further evidence of the intent to place the Special Prosecutor on par with the County District Attorneys.[4]

_____

neither Town nor County Court ordered such notice. However, on appeal to this Court, the Attorney General became aware of this matter without the statutory notification, and appears as amicus in accordance with part 500.12 of our rules (see Rules of Practice for the Court of Appeals, 22 NYCRR Part 500.12 [e]).

[4] In the alternative, the Justice Center agrees that any constitutional impediment to the exercise of prosecutorial authority may be resolved by authorizing the Special Prosecutor to act with the consent of the local District Attorney.

The Justice Center specifically argues that it is the Legislature which determines the authority of District Attorneys and may appoint non-District Attorneys to prosecute, including non-elected officials, and has done so in the past.

The Justice Center's arguments are unpersuasive. Applicable state constitutional provisions and our case law explaining the historical prosecutorial authority of the District Attorney and Attorney General do not support the sweeping independent power advocated by the Justice Center. Indeed, if the Act were construed to permit the gubernatorial appointment of a nonelected special prosecutor, independent of the District Attorneys and with unfettered prosecutorial power, such legislative delegation would be unconstitutional.

B.

"Where the Constitution establishes a specified office, or recognizes its existence, and prescribes the manner in which it shall be filled, the legislature may not transfer any essential function of the office to a different officer chosen in a different manner" (Wogan v Rafferty, 208 NY 451, 456 [1913] [internal citation omitted]). Notwithstanding legislative regulation over some aspect of the duties of constitutional officers, the Legislature cannot "depriv[e] them of a substantial attribute of the office" (id.). To permit such a trespass would sanction an inherently unconstitutional act because

> "[w]hen the legislature . . . assumes the
> power to take from a constitutional officer
> the substance of the office itself, and to
> transfer it to another who is to be appointed
> in a different manner and to hold the office
> by a different tenure than that which was
> provided for by the Constitution, it is not a
> legitimate exercise of the right to regulate
> the duties or emoluments of the office, but
> an infringement upon the constitutional mode
> of appointment"

(id. at 456-57 [internal quotations omitted]; see also Haggerty v City of New York, 267 NY 252, 258 [1935] [legislature could control and limit salaries of a municipal court because it was not, and did not have all the powers of, a *constitutional* court]).

The District Attorney and Attorney General are constitutional officers, chosen by election (see NY Const. art. 5, § 1; art. 13, § 13)  The Constitution is silent as to their duties, and "does not specify or allocate the powers of the respective offices" (People v Gilmour, 98 NY2d 126, 130 [2002]), although it designates the District Attorney as a law enforcement officer (NY. Const. art. 13, § 13).  However, this Court has recognized the essential powers of the District Attorney and Attorney General, based on their respective prosecutorial roles (Gilmour, 98 NY2d at 130-133).

Historically, both the District Attorney and Attorney General were responsible for the prosecution of crimes in New York State (id. at 130).  While the Attorney General's original exclusive general prosecutorial authority no longer exists, it

has instead given way to specific statutory authorizations (id. at 131). For example, the Attorney General has power to prosecute under Executive Law § 63 and General Business Law §§ 347, 358 (see Executive Law § 63 [2]-[3] [allowing the attorney general to assume prosecutorial responsibly for local crimes at the request of the governor]; GBL § 347 [authority to prosecute certain civil crimes]; GBL § 358 [authority to prosecute securities fraud]). In contrast, under County Law § 700 (1) District Attorneys are authorized to prosecute "crimes and offenses cognizable by the courts of the count[ies] [sic]" (Gilmour, 98 NY2d at 127).

The Court has time and again defined the essential characteristic of the District Attorney's prosecutorial authority as the "discretionary power to determine whom, whether and how to prosecute" (Matter of Haggerty v Himelein, 89 NY2d 431, 436 [1997], quoting Matter of Schumer v Holtzman, 60 NY2d 46, 52 [1983]). The Court explained in Schumer that while, for example, a District Attorney may "delegate *duties* to her assistants . . . she may not transfer the fundamental responsibilities of the office to them" (60 NY2d at 53 [emphasis added]). The Court stated in Haggerty that "the essence of a District Attorney's constitutional, statutory and common-law prosecutorial authority is the discretionary power to determine whom, whether and how to prosecute [a criminal] matter, the responsibility and accountability for which is not freely transferable to anyone

else" (89 NY2d at 436 [internal quotation and citation omitted]). We recently reaffirmed that the "authority to compel the prosecution of criminal actions . . . is solely within the broad authority of the district attorney's executive power to conduct all phases of criminal prosecution" (Soares, 25 NY3d at 1014).

This Court's decision in Soddano does not put in question this fundamental understanding of the prosecutorial function of the District Attorney.  In Soddano, the Court held that County Law § 701 (1) did not require the personal presence of the local District Attorney at every hearing in the County, and, concluded in accordance with a prior line of cases that "the prosecution of petty crimes or offenses may be delegated to subordinates and other public or administrative officers and even to private attorneys" (86 NY2d at 728 citing People v DeLeyden, 10 NY2d 293, 294 [1961]; People v Czajka, 11 NY2d 253, 254 [1962]).  Nevertheless, District Attorneys "retain the ultimate, nondelegable responsibility for prosecuting all crimes and offenses" and may allow others to appear on their behalf only "so long as they are kept aware of all the criminal prosecutions in the county" (id.).  Thus, while County Law § 701 (1) and this Court's case law allow for ad hoc prosecutions by non-district attorneys, our precedent and this state's constitutional principles do not allow the Legislature to create a standing office empowered to handle a category of designated criminal matters related to the safety of a targeted class of persons, as

is the case with the Special Prosecutor.  Further, the Justice Center's prosecutors do not have independent prosecutorial authority because under Soddano delegation is permissible only when the District Attorney retains final authority and ultimate responsibility.

Our jurisprudence leads to the conclusion that the Legislature may choose to allocate law enforcement powers among constitutional officers, and may permit non-district attorneys to prosecute certain offenses, but it cannot diminish the essential discretionary prosecutorial power, which we have defined as the choice whether and who to prosecute.  In cases of statutory appointments, other than in cases involving the Attorney General, the District Attorney must retain ultimate responsibility for the prosecution.

When interpreting statutes we must make every effort to do so in a manner that avoids a constitutional conflict (Lorie C. v St. Lawrence County Dept. of Social Services, 49 NY2d 161, 171 [1980]; Rector, Church Wardens and Vestrymen of St. Bartholomew's Church in City of New York v Comm. to Preserve St. Bartholomew's Church, Inc., 84 AD2d 309, 316 [1st Dept 1982]).  We can do so in this case because the Act provides significant limitations on the power of the Special Prosecutor, and requires that the Special Prosecutor exercise authority in cases where the District Attorney's powers are neither impeded nor undermined.  Contrary to the Justice Center's view, the Special Prosecutor is not on

equal footing with the local District Attorney.

First, the Act provides that "nothing herein shall interfere with the ability of the district attorneys at any time to receive complaints, investigate and prosecute any suspected abuse or neglect" (Executive Law § 552 [2] [a]).  This means that the Special Prosecutor's authority is limited by the choices exercised by the District Attorney.  For example, a Special Prosecutor who, without consent, seeks to prosecute an individual that the District Attorney has declined to prosecute would be interfering with the prosecutorial discretion of that District Attorney.  Similarly, a prosecution unapproved by the District Attorney may very well interfere with an ongoing investigation -- an outcome counter to the legislative intent.

Second, the Act does not provide the Special Prosecutor with complete independence because it requires notification to the District Attorney of any warrant application, and also mandates that the Special Prosecutor consult with the District Attorney before appearing in County and Supreme Court or at a grand jury.  Although nowhere in the Act does it use the word "consent" or state that the District Attorney must give prior consent, given that the Act clearly protects the authority of the District Attorney from any interference by the Special Prosecutor, the only manner by which interference can be avoided is by notice, consultation and consent.  While the legislative findings reference concurrent authority of the Special Prosecutor

and District Attorney, this prefatory language is not in tension with a construction of the Act that requires a local District Attorney's consent. The Act is properly understood as granting the Special Prosecutor the full range of prosecutorial power available to the District Attorney, once the District Attorney has consented, and so long as the District Attorney retains ultimate responsibility to prosecute (see Soddano, 86 NY2d at 728). Nor does the inclusion of the special prosecutor within the definition of District Attorney, as set forth in CPL 1.20 [32], affect this analysis. That section recognizes that the Special Prosecutor's authority to act as a District Attorney only applies within the confines of the Act, and, as discussed, the Act requires that the District Attorney consent to any prosecution.

As explained above, the Act may be interpreted in a manner that is congruent with the constitution and our case law. Specifically, because the District Attorney's essential prosecutorial power to determine whether, who and how to prosecute may not be diminished or transferred to an unelected official, the unelected Special Prosecutor may appear on criminal matters so long as the District Attorney does not object, and retains ultimate responsibility for any prosecution handled by the Special Prosecutor.[5]

---

[5] On this appeal the Court need not consider the nature of the District Attorney's involvement in a criminal action

In contrast, an independent Special Prosecutor, in the nature described by the Justice Center, would violate the constitution by transferring the essential power to choose whether and who to prosecute from elected District Attorneys to a nonelected official.  This would diminish the District Attorneys' core responsibilities as constitutional officers to prosecute crimes and to choose what crimes to prosecute.

There is an important governmental public policy of ensuring independence for those charged with absolute discretion to pursue criminal matters.  This policy furthers our democratic system of checks and balances and reaffirms this Court's prior recognition of the "awesome and sometimes coercive force of the State" (People v Rogers, 48 NY2d 167, 173 [1979]).  This "awesome power" is illustrated by the state's ability to deprive individuals of their liberty and freedom.  However, it is equally present when the state charges an individual with a crime.  Indeed, the mere act of bringing charges can have profound and far-reaching effects on a person.  A person's reputation can be ruined, employment terminated, and finances placed in jeopardy, regardless of whether that person is later acquitted or the charges are dropped.  Under our constitution and case law the "awesome power" of unchecked prosecutorial authority requires public oversight and cannot be held by an unelected special

initiated by the Special Prosecutor.

prosecutor.


                            III.

        The matter should be remanded to determine whether the
District Attorney consented to defendant's prosecution.  If
consent was provided then the prosecution may proceed in Town
Court.  Otherwise, the Special Prosecutor may not unilaterally
prosecute defendant.

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

Order affirmed, in a memorandum.  Judges Pigott, Stein, Fahey and
Garcia concur.  Judge Rivera dissents in an opinion in which
Judge Abdus-Salaam concurs.  Chief Judge DiFiore took no part.


Decided June 7, 2016